## NATIONAL LABOR RELATIONS BOARD v. SWIFT & CO.

### No. 9228.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 18, 1947.

Decided June 11, 1947.

Elizabeth Weston, of Washington, D. C. (Gerhard P. Van Arkel, Gen. Counsel, Morris A. Glushien, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Leonard Appel and Charles Ryan, Attys., N.L.R.B., all of Washington, D. C., on the brief), for appellant.

Bernard G. Segal, of Philadelphia, Pa. (Wm. A. Schnader, Irving R. Segal, and Schnader, Kenworthey, Segal and Lewis, all of Philadelphia, Pa., on the brief), for appellee.

Before O'CONNELL and KALODNER, Circuit Judges, and FOLLMER, District Judge.

KALODNER, Circuit Judge.

Three questions are presented by this petition [1] of the National Labor Relations Board for enforcement of its order of August 31, 1945, against the respondent, an Illinois corporation operating a meat packing plant at Jersey City, New Jersey. The Board's jurisdiction is conceded.

---

[1] Pursuant to Section 10(e) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

The three questions involved are: (1) whether certain plant clerks and standards department checkers are "employees" within the meaning of the Act; (2) whether the Board could properly certify as the exclusive bargaining representative of a unit including the plant clerks and checkers a union, of which a coaffiliate represents respondent's production and maintenance employees, and order respondent to bargain collectively with the union so certified; (3) whether the Board in its discretion may require respondent to bargain collectively with the Union which represented a majority of the employees in the certified unit at the time of respondents refusal to bargain, despite the Union's loss of majority status after respondent failed to bargain for an unbroken period of approximately two years.

The Board's order was based on findings that respondent, in violation of Section 8(1) and (5) of the Act, refused to bargain collectively with United Packinghouse Workers of America, Local 49-A (C.I.O.), herein called the Union, as the exclusive representative of what the Board determined to be an appropriate unit composed of clerical employees at its Jersey City plant. The Board's order required respondent to cease and desist from the unfair labor practices found and from any related conduct, to bargain collectively with the Union upon request, and to post notices as hereinafter discussed.

It appears that on December 2, 1943, the Union filed its representation petition under Section 9 of the Act with respect to a group of employees, including plant clerks and standards department checkers. The Trial Examiner of the Board conducted a hearing on February 16, 1944, attended by the Union and the respondent. On April 29, 1944, the Board issued a Decision and Direction of Election in which it found that the plant clerks and standards department checkers were not managerial employees as contended by respondent and that these employees, together with certain other employees constituted a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act.

On May 24, 1944, an election was conducted and the Board on June 5, 1944, issued a certificate of representation in which it found that of approximately 29 eligible voters, 20 cast valid votes for the Union and three against it. It may be noted that no objections to the election were filed by the respondent. The certification of the Union as the exclusive bargaining representative of the employees in the unit was in conformity with the provision of Section 9(a) and (c) of the Act.

On November 16, 1944, the respondent advised the Union of (a) its refusal to bargain with it on matters relating to plant clerks, and of (b) its intention to seek Court review of any Board order that might issue because of respondent's refusal to negotiate. The respondent in doing so took the position that the unit included individuals who were part of management and whose duties were supervisory in character, so that they were not "employees" under the Act; further, that in any event they should not be represented by the same union as the company's production employees, and finally that the unit was too heterogeneous to be valid. The Union thereupon filed charges that respondent had refused to bargain with it and proceedings were commenced under Section 10(c) of the Act.

The Board thereupon issued a complaint against the respondent and on March 21 and 22, 1945, hearings were held before a Trial Examiner. At the hearings upon the complaint, respondent admitted its refusal to negotiate with the Union. On April 6, 1945, the Intermediate Report of the Trial Examiner was filed. The report found that " * * * the Union was the duly designated bargaining representative of a majority of the employees in the aforesaid bargaining unit * * * " and was therefore " * * * the exclusive representative * * * ". It also found that the respondent " * * * has refused to bargain collectively with the Union as the exclusive representative of its employees in an appropriate unit and has thereby interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed in Section 7 of the Act."

Subsequently, on August 31, 1945, the Board issued its Decision and Order affirming its previous finding in the representation proceedings and finding further that the respondent's refusal to bargain with the Union constituted a statutory violation. The respondent was ordered, among other things, to bargain collectively with the Union upon request. For the reasons previously stated the respondent continued to refuse to do so.

The Board did not file its petition for enforcement of its order and a transcript of the record in the representation and the complaint proceedings until September 12, 1946.

The respondent's answer raised a number of objections to the Board's order and to the conduct of proceedings before the Board.

On November 14, 1946, before respondent's brief on these issues was due for filing, a communication was presented to Mr. W. R. Moffat, Superintendent of the Jersey City plant of the company. This communication read as follows: "We the undersigned plant clerks and checkers do hereby state, that we do not wish to be represented by unionism in this plant."

The communication was signed by 20 of the 25 persons in the positions comprising the unit which the Board found appropriate in its decision of April 29, 1944.

In view of this communication the respondent, on November 25, 1946, filed with this Court a motion for leave to adduce additional evidence material to this cause, under Section 10(e) of the Act, 29 U.S.C.A. § 160(e).

In its motion, respondent averred as follows: that of the 20 persons who signed the above communication, 13 were not on its payroll at the time of the election on May 24, 1944; of these, 9 were former employees who were serving in the armed forces of the United States at the time of the election and who had since returned to its staff; seven of these 9 occupied positions which would have rendered them eligible to vote at the time of the election if they had not been in military service—two of them occupied such positions since their return from military service; another of these 13

persons was in its employ at the time of the election but was not in the alleged unit and was therefore ineligible to vote; he was subsequently transferred to a position which placed him within the alleged unit; two additional persons in this group of 13 were hired and one was transferred to its Jersey City plant since the election and after all hearings were concluded in these proceedings; the remaining seven of the 20 persons who signed the communication were eligible to vote in the election of May 24, 1944.

Argument on the respondent's motion was heard by this Court on December 16, 1946. At the time the respondent asserted that it was prepared to prove that the foregoing changes in personnel occurred in the normal course of business, replacement of women—who had temporarily occupied these positions during wartime—by men. Respondent urged that the purposes of the Act would not be served by compelling it to bargain with the Union as the sole representative of its employees in complete disregard of the wishes of the majority of these employees. In reply, counsel for the petitioner advised the Court that assuming that the respondent established by evidence adduced at a hearing all of its allegations as to the Union's loss of majority, the petitioner would reaffirm its order of August 31, 1945, and again direct the respondent to bargain with the Union.

In view of the position taken by the petitioner, this Court on December 20, 1946, 158 F.2d 670, deferred ruling on respondent's motion, stating: " * * * It appears to us that a remand for the purpose of adducing additional testimony would be a useless gesture, at this point, and result only in delay in a case which has already been pending too long. It is, therefore, our conclusion not to grant the motion at this time, but to preserve the right of the respondent to argue his legal point as though the evidence had been adduced."

The parties are agreed that in determining the question of change of status " * * the case is now to be treated as if the requested remand had taken place, the facts sought to be adduced had been found by the Board, and the Board had formally decided that it would effectuate the policies of

the Act for respondent to bargain collectively on request with the Union * * *" (page 1, Petitioner's Reply Brief).

## Discussion

As to the first question presented—whether certain plant clerks and standards department checkers are "employees" within the meaning of the Act:

The core of the respondent's contention with respect to this issue is that the plant clerks and standards department checkers perform duties supervisory in character so as to " * * * clearly align these employees on the management side * * *" and that they are not "employees" but rather "employers" under the Act, and therefore not subject to the collective bargaining provisions of the Act.

The petitioner takes the position that none of the employees involved perform supervisory duties and that there was ample evidence to sustain the finding that they were not invested with managerial functions. In support of its position petitioner cited National Labor Relations Board v. Armour & Co., 10 Cir., 154 F.2d 570, certiorari denied 67 S.Ct. 92, as being "on all fours" with the instant case.

The ruling of the Supreme Court in Packard Motor Car Company v. National Labor Relations Board, 67 S.Ct. 789, 791, makes discussion of this question academic. In that case, it was contended that foremen are not "employees" because they perform supervisory functions. Rejecting the contention the Supreme Court held that they were stating: "The privileges and benefits of the Act are conferred upon employees, and § 2(3) of the Act, so far as relevant, provides 'The term "employee" shall include any employee * * *' 49 Stat. 450. The point that these foremen are employees both in the most technical sense at common law as well as in common acceptance of the term, is too obvious to be labored. The Company, however, turns to the Act's definition of employer, which it contends reads foremen out of the employees class and into the class of employers. Section 2(2) reads: 'The term "employer" includes any person acting in the interest of an employer, directly or indirectly * * *' 49 Stat. 450. The context of the Act, we think, leaves no room for a construction of this section to deny the organizational privilege to employees because they act in the interest of an employer."

Further, the Supreme Court in its most recent expression on the subject has ruled that "it is elementary that the Board has the duty of determining in the first instance who is an employee for purposes of the National Labor Relations Act and that *the Board's determination must be accepted by reviewing courts if it has a reasonable basis* in the evidence and is not inconsistent with the law." (Emphasis supplied.) National Labor Relations Board v. E. C. Atkins and Company, 67 S.Ct. 1265, 1268.

Citing the Packard Motor Car Company decision, the Supreme Court in the Atkins case sustained the Board's ruling that private plant guards who were civilian auxiliaries to the Army's military police were "employees" within the meaning of the Act.

Said the Court in discussing the question of the Board's primary power to determine who is an "employee" under the Act:

" * * * Realizing that labor disputes and industrial strife are not confined to those who fall within ordinary legal classifications. Congress has not attempted to spell out a detailed or rigid definition of an employee or of an employer. The relevant portion of § 2(3) simply provides that 'The term "employee" shall include any employe, * * *.' In contrast, § 2(2) states that 'The term "employer" includes any person acting in the interest of an employer, directly or indirectly, * * *.' As we recognized in the Hearst case [National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 85, 88 L.Ed. 1170], the terms 'employee' and 'employer' in this statute carry with them more than the technical and traditional common law definitions. They also draw substance from the policy and purposes of the Act, the circumstances and background of particular employment relationships, and all the hard facts of industrial life.

"And so the Board, in performing its delegated function of defining and applying these terms, must bring to its task an appreciation of economic realities, as well as a recognition of the aims which Congress

sought to achieve by this statute. This does not mean that it should disregard the technical and traditional concepts of 'employee' and 'employer'. But it is not confined to those concepts. It is free to take account of the more relevant economic and statutory considerations. And a determination by the Board based in whole or in part upon those considerations is entitled to great respect by a reviewing court, due to the Board's familiarity with the problems and its experience in the administration of the Act.

"* * * In the absence of some compelling evidence that the Board has failed to measure up to its responsibility, courts should be reluctant to overturn the considered judgment of the Board and to substitute their own ideas of the public interest. * * *"

■ It is clear that under the rulings in the Packard Motor Car Company and the Atkins cases the respondent's contentions must fail. The record discloses that there was a "reasonable basis" for the Board's determination and that it was in accordance with the law as declared in the two cases cited.

As to the second question presented: Whether the Board could properly certify as the exclusive bargaining representative of a unit including the plant clerks and checkers a union, of which a coaffiliate represents respondent's production and maintenance employees, and order respondent to bargain collectively with the union so certified.

The respondent's position on this question may be summarized as follows:

The plant clerks and standards department checkers are not "employees" under the Act; the clerks and checkers are supervisory employees and the Board itself had excluded from the supervisory unit "all supervisory employees with authority to hire, promote, discharge, discipline, or otherwise effect changes in the status of employees, or effectively recommend such action"; the clerks, checkers, storeroom clerk and commissary employees performed different duties and functions and their inclusion in one unit was erroneous, the clerks and checkers could not, in any event, be represented by a union or affiliate of a union which also represented the production or maintenance workers because they would otherwise be subjected to conflicting interests.

Petitioner's position is as follows:

The Board's finding that the clerks and checkers, together with the storeroom clerk and commissary employees constituted a unit appropriate for the purpose of collective bargaining within the meaning of Section 9(b) of the Act was amply supported by the evidence; the Board had no power to deny certification to the Union solely because its coaffiliate also represented respondent's production employees; the Board's certification of the Union as the exclusive representative of respondent's clerical employees was a reasonable exercise of discretion.

Recent decisions by the Supreme Court on the question of certification are dispositive of the respondent's contentions.

Discussing the Board's discretion to determine appropriate units the Supreme Court in the Packard Motor Car Company case, supra, stated: "*Section 9(b) of the Act confers upon the Board a broad discretion to determine appropriate units. * * Our power of review also is circumscribed by the provision that findings of the Board as to the facts, if supported by evidence, shall be conclusive.* § 10(e), 49 Stat. 454. So we have power only to determine whether there is *substantial evidence to support the Board, or its order oversteps the law.* (citing cases) * * * The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion and the decision of the Board, if not final, is rarely to be disturbed. * * *" (Emphasis supplied.)

■ The respondent's contention that the petitioner erred in grouping in the same unit clerks and checkers with the storeroom clerk and commissary employees and permitting them to be represented by a union or affiliate of a union which also represented production and maintenance workers, is effectively disposed of by the Supreme Court's ruling in National Labor Relations

Board v. Jones & Laughlin Steel Corporation, 67 S.Ct. 1274, 1278.

Said the Court:

"Unanswered by the Atkins decision, (supra), however, is the question whether the militarization of the plant guards precluded the Board from grouping the guards in a separate unit and permitting them to choose as their bargaining representative a union which also represented production and maintenance employees. To that issue, which is the primary one raised by this case, we now turn.

"*The Board, of course, had wide discretion in performing its statutory function under § 9(b) of deciding 'the unit appropriate for the purposes of collective bargaining.'* Pittsburgh Plate Glass Co. v. National Labor Relations Board, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251. *It likewise has discretion to place appropriate limitations on the choice of bargaining representatives should it find that public or statutory policies so dictate. Its determinations in these respects are binding upon reviewing courts if grounded in reasonableness.* May Department Stores Co. v. National Labor Relations Board, 326 U.S. 376, 380, 66 S.Ct. 203, 206, 90 L.Ed. 145. A proper determination as to any of these matters, of course, necessarily implies that the Board has given due consideration to all the relevant factors and that it has correlated the policies of the Act with whatever public or private interests may allegedly or actually be in conflict". (Emphasis supplied.)

Applying the rules stated we find that there was substantial evidence supporting the Board's unit determination and its certification of the Union as the exclusive bargaining representative of the unit, and further that such certification was a reasonable exercise of discretion on the part of the Board, and consistent with the law.

As to the remaining question—the Union's loss of majority status:

The respondent's position is that the change of status occurred due to re-employment of veterans and changes in personnel in the normal course of business without any interference, coercion or even suggestion on its part; that the purposes of the Act would not be served by compelling it to bargain with the Union in complete disregard of the wishes of the majority of its present employees; that the respondent has had a good labor record; that the sole "unfair labor practice" charged against it was its refusal to abide by the Board's alleged invalid finding that the clerks and checkers were "employees" under the Act and its alleged improper certification of the unit and Union; that its refusal to abide by the result of the representation proceeding under Section 9(c) and the complaint proceeding under Section 10(b) of the Act was "necessitated by the procedure set forth in the Act to test the validity of the Board's unit determination"; that, for the latter reason, the doctrine that an intervening loss of majority does not relieve an employer of the remedial obligation to bargain with a union in compliance with the Board's prior order is inapplicable.

The petitioner's position is that the Board may in its discretion require respondent to bargain collectively with the certified union which suffered a loss of majority following respondent's refusal to bargain; that the Board properly found that respondent's initial refusal to bargain with the Union was in violation of the Act and that it properly determined that there was a direct causal relationship between respondent's refusal to bargain and the Union's failure to retain its majority.

 The vulnerable point in respondent's position is its contention that under the Act it could only test the validity of the Board's determinations and orders in the representation and complaint proceedings by refusing compliance. That is not the law. Under Section 10(f) of the Act, 29 U.S.C.A. § 160(f) "Any person aggrieved by a final order of the Board * * * may obtain a review of such order in any circuit court of appeals of the United States * * * by filing in such court a written petition praying that the order of the Board be modified or set aside."

 The Board's order of August 31, 1945 was a final order within the meaning of Section 10(f) of the Act. The record discloses that more than a year intervened between the issuance of the order and September 12, 1946 when the Board petitioned

this Court for enforcement. During this period the respondent was in non-compliance and it failed to apply for modification or vacation of the Board's order. The asserted change of status did not occur until November 14, 1946.

The rule that a Board's certification cannot be disregarded by an employer and that the certification is valid until declared invalid or replaced by the Board, is well-settled: National Labor Relations Board v. May Department Stores Company, 8 Cir., 146 F.2d 66, 70 and the cases cited therein, (affirmed with modifications 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145).

In view of the above the respondent's position must be considered in the light of the principles enunciated by the Supreme Court in International Association of Machinists v. National Labor Relations Board, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50, and Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020.

In the Machinists case, the Supreme Court sustained the established policy of the Board with reference to change of status, as enunciated in the Matter of Karp Metal Products Company, 51 N.L.R.B. 621.[2]

Said the Court, 311 U.S. at page 82, 61 S.Ct. at page 89, 85 L.Ed. 50:

"* * * Where as a result of unfair labor practices a union cannot be said to represent an uncoerced majority, the Board has the power to take appropriate steps to the end that the effect of those practices will be dissipated. That necessarily involves an exercise of discretion on the part of the Board—discretion involving an expert judgment as to ways and means of protecting the freedom of choice guaranteed to the employees by the Act. *It is for the Board, not the courts, to determine how the effect of prior unfair labor practices may be expunged.* National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 271, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307; National Labor Relations Board v. Falk Corp., 308 U.S. 453, 461, 60 S.Ct. 307, 84 L.Ed. 396. It cannot be assumed that an unremedied refusal of an employer to bargain collectively with an appropriate labor organization has no effect on the development of collective bargaining. See National Labor Relations Board v. Pacific Greyhound Lines, 303 U.S. 272, 275, 58 S.Ct. 577, 578, 82 L.Ed. 838. Nor is the conclusion unjustified that unless the effect of the unfair labor practices is completely dissipated, the employees might still be subject to improper restraints and not have the complete freedom of choice which the Act contemplates. *Hence the failure of the Board to recognize petitioner's notice of change was wholly proper.* National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 339, 340, 60 S.Ct. 918, 929, 84 L.Ed. 1226.

"Sec. 9 of the Act provides adequate machinery for determining in certification proceedings questions of representation *after unfair labor practices have been removed* as obstacles to the employees' full freedom of choice." (Emphasis supplied.)

In the Franks Bros. Co. case, supra, the Supreme Court held that the Board acted within its statutory authority in ordering the employer to bargain collectively with the Union which *had lost its majority after the employer had refused to bargain with it.* In that case the change of status occurred during the pendency of the complaint proceedings. The Board found that

---

[2] Said the Board in the Karp Metal case:

"* * * Employees join unions in order to secure collective bargaining. Whether or not the employer bargains with a union chosen by his employees is normally decisive of its ability to secure and retain its members. *Consequently, the result of an unremedied refusal to bargain with a union, standing alone is to discredit the organization in the eyes of the employees, to drive them to a second choice, or to persuade them to* abandon collective bargaining altogether. * * *

"It may be assumed that some of those who abandoned the Union were motivated in part by factors other than the discouraging effects of the unfair labor practices which the respondent committed. But any attempt to disentangle other factors from these discouraging effects is impossible so long as the unfair practices are unremedied. * * *" (Emphasis supplied.)

the Union's lack of a majority was "not determinative of the remedy to be ordered" [321 U.S. 702, 64 S.Ct. 818]. Discussing the Board's action the Court stated, 321 U.S. at page 704, 64 S.Ct. at page 818, 88 L.Ed. 1020:

"* * * Out of its wide experience, the Board many times has expressed the view that the unlawful refusal of an employer to bargain collectively with its employees' chosen representatives disrupts the employees' morale, deters their organizational activities, and discourages their membership in unions. The Board's study of this problem has led it to conclude that, for these reasons, a requirement that union membership be kept intact during delays incident to hearings would result in permitting employers to profit from their own wrongful refusal to bargain. See e. g., Matter of Inland Steel Co., 9 N.L.R.B. 783, 815, 816; Matter of P. Lorillard Co., 16 N.L.R.B. 684, 699, 701. One of the chief responsibilities of the board is to direct such action as will dissipate the unwholesome effects of violations of the Act. See 29 U.S.C. § 160(a) and (c), 29 U.S.C.A. § 160(a, c). And, 'It is for the Board not the courts to determine how the effect of prior unfair labor practices may be expunged.' International Association of Machinists v. National Labor Relations Board, 311 U.S. 72, 82, 61 S.Ct. 83, 85 L.Ed. 50.

"That determination the Board has made in this case and in similar cases by adopting a form of remedy *which requires that an employer bargain exclusively with the particular union which represented a majority of the employees at the time of the wrongful refusal to bargain despite that union's subsequent failure to retain its majority.* * * * *That the Board was within its statutory authority in adopting the remedy which it has adopted to foreclose the probability of such frustrations of the Act seems too plain for anything but statement.* See 29 U.S.C. § 160(a) and (c), 29 U.S.C.A. § 160(a, c). * * *" (Emphasis supplied.)

In Oughton v. National Labor Relations Board, 3 Cir., 118 F.2d 486, at page 497, in which we applied the ruling in the Machinists case relating to change of status, we said: "* * * The Machinists case

points out the immateriality of an asserted loss of a bargaining agent's majority to the issue raised by a complaint based upon the employer's unfair labor practices, except, of course, in so far as the Board in its uncontrolled discretion may deem the agent's status worthy of investigation and consequent action. And, where the Board passes over the agent's support as being presently of no moment, the Act, as observed in the Machinists case, provides other procedure for the resolution of the independent problem. * * *"

The respondent attempts to distinguish the instant case from the Franks Bros. Co. and Oughton cases. It urges that here it is not charged with any unfair labor practice except a "technical" refusal to bargain with the Union, based on its desire to obtain a judicial determination of the validity of the certified unit, whereas in the cases mentioned there was active opposition by the employer to the Union, including threats to shut down if the employees joined the Union. We cannot subscribe to the respondent's urging on this score. The excerpt above quoted from the Franks Bros. Co. case clearly discloses that the Supreme Court directly and unequivocally premised its decision on the employer's refusal to bargain.

In the Oughton case we too, premised our ruling on the employer's refusal to bargain.

In Semi-Steel Casting Company of St. Louis v. National Labor Relations Board, 160 F.2d 388, 392, the United States Court of Appeals for the Eighth Circuit held that "* * * the union's loss of majority status, during the course of the proceedings before the Board on the charge of unfair labor practices against the company, if established, does not invalidate the order of the Board." The Court cited National Licorice Company v. National Labor Relations Board, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 the Franks Bros. Co. and Machinists cases, and Medo Photo Supply Corp. v. National Labor Relations Board, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007.

In the Semi-Steel Casting Company case the only unfair labor practice involved was the refusal to bargain. The latter was

premised on the employer's contention that the Board had erred in the conduct of an election to select the bargaining representative.

Similarly in National Labor Relations Board v. Central Dispensary & Emergency Hospital, 79 U.S.App.D.C. 274, 145 F.2d 852, certiorari denied 324 U.S. 847, 65 S.Ct. 684, 89 L.Ed. 1408, no unfair labor practice —other than the refusal to bargain—was involved.

The instant situation is singularly akin to that in the Central Dispensary case.

There a charitable institution refused to recognize the Board's certification in December, 1942, under the belief that it was not subject to the Act. Six months later the Board issued its Cease and Desist order and a year thereafter instituted enforcement proceedings before the United States Court of Appeals, District of Columbia. In the enforcement proceeding, the Court refused to grant a motion for leave to adduce additional evidence designed to establish the Union's loss of majority status. Said the Court, 145 F.2d at page 854:

"* * * We consider this evidence irrelevant under the circumstances of the present case. The certification of the union which contains the finding that at that time the union was representative was issued by the Board in December, 1942. Six months later the Board issued an order to cease and desist from refusing to bargain collectively. At that time the respondent had the right to appeal to this court under Section 10(f) of the Act. Respondent also had a right to petition the Board at that time for a hearing on whether the six months' delay in issuing the order had created a change in the representative character of the union. Respondent took neither of these steps. *While the Board delayed over a year in bringing the case before us for enforcement, respondent cannot now take advantage of that fact because during the entire period it lay within its own power to seek relief.*

"There is, therefore, nothing in this case which takes it out of the rule laid down by the Supreme Court in Franks Brothers Co. v. National Labor Relations Board, where the Court held that there was no require-ment that union membership be kept intact during delays incident to hearing on the question of union representation. * * *" (Emphasis supplied.)

The respondent relies on National Labor Relations Board v. Inter-City Advertising Company, 154 F.2d 244, where the United States Circuit Court of Appeals for the Fourth Circuit denied the Board's petition for enforcement. While the petitioner has stressed several distinguishing factors we *need only say that we are not in accord* with the majority view in the Inter-City case and agree instead with the views expressed by Judge Dobie in his dissenting opinion.

Finally, the respondent urges that granting of the petition for enforcement of the Board's order will deprive the respondent's employees of the exercise "of full freedom of association, self-organization, and designation of representatives of their own choosing" as prescribed by Section 1 of the Act.

The Supreme Court in the Franks Bros. Co. case, supra, gave dispositive answer to that specific contention in the following statement, 321 U.S. at page 705, 64 S.Ct. at page 819, 88 L.Ed. 1020:

"* * * Contrary to petitioner's suggestion, this remedy, as embodied in a Board order, does not involve any injustice to employees who may wish to substitute for the particular union some other bargaining agent or arrangement. For a Board order which requires an employer to bargain with a designated union is not intended to fix a permanent bargaining relationship without regard to new situations that may develop. See Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 139 F.2d 984, 987. But, as the remedy here in question recognizes, a bargaining relationship once rightfully established must be permitted to exist and function for a reasonable period in which it can be given a fair chance to succeed. See National Labor Relations Board v. Appalachian Electric Power Co., 4 Cir., 140 F.2d 217, 220–222; National Labor Relations Board v. Botany Worsted Mills, 3 Cir., 133 F.2d 876, 881, 882. *After such a reasonable period the Board may, in a proper proceeding and*

*upon a proper showing, take steps in recognition of changed situations which might make appropriate changed bargaining relationships.* Id.; see 29 U.S.C. § 159(c), 29 U.S.C.A. § 159(c). * * *" (Emphasis supplied.)

█ It may well be that the Board after a reasonable period has elapsed may reappraise the situation and take appropriate action in view of the fact that the respondent has been guilty of no "unfair labor practice" other than the failure to comply with the Board's order for the express purpose of testing its validity, but as pointed out in the Central Dispensary case, "This is a matter lying within the discretion of the Board."

█ In view of the foregoing, we conclude that the Board was within its statutory authority in requiring the respondent to bargain exclusively with the Union despite its failure to retain its majority.

One final question remains—the scope of the Board's order.

The respondent takes vigorous exception to Paragraph 1(b) of the Board's order, asserting that it was completely unjustified and unsupported by the evidence.[3] That paragraph, together with Paragraph 1(a), which enjoins refusal to bargain, is set out below.[4]

The challenged order was made prior to the decision of the Supreme Court in May Department Stores Co. v. National Labor Relations Board, supra. The petitioner, in conformity with the delimitation of the Board's order by the Court in that case, suggests the modification of the Board's existing order by striking Paragraph 1(b) and adding to Paragraph 1(a) of the order the clause "or from any other acts in any manner interfering with the representative's efforts to negotiate for or represent the above-named employees as bargaining agent."

In support of its objections to Paragraph 1(b) the respondent stresses that the only unfair labor practice charged is its refusal to bargain collectively with the Union, the purpose of which was to test the validity of the Board's unit determination.

█ The applicable rule is stated as follows in National Labor Relations Board v. Express Publishing Co., 312 U.S. 426, at page 437, 61 S.Ct. 693, 700, 85 L.Ed. 930: "* * * We hold only that the *National Labor Relations Act does not give the Board an authority, which courts cannot rightly exercise, to enjoin violations of all the provisions of the statute merely because the violation of one has been found. To justify an order restraining other violations it must appear that they bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past. * * *"* (Emphasis supplied.)

Citing with approval the Express Pub-

---

[3] In its exception to the Intermediate Report of the Trial Examiner in the complaint proceeding and in its answer to the Board's petition for enforcement, it takes a similar position.

[4] "Upon the entire record in the case, and pursuant to Section 10(c) of the National Labor Relations Act, the National Labor Relations Board hereby orders that the respondent, Swift and Company, Jersey City, New Jersey, and its officers, agents, successors, and assigns, shall:

1. Cease and desist from:

(a) Refusing to bargain collectively with United Packinghouse Workers of America, C.I.O., Local 49-A, as the exclusive representative of all plant clerks, standards department checkers, storeroom clerk, and commissary employees, at its Jersey City plant, but excluding time and employment office employees, time-study employees, storeroom laborer, head storekeeper, chief clerk, fire marshal and all supervisory employees with authority to hire, promote, discharge, discipline, or otherwise effect changes in the status of employees, or effectively recommend such action;

(b) Engaging in any like or related act or conduct interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form labor organizations, to join or assist United Packinghouse Workers of America, Local 49-A, affiliated with the Congress of Industrial Organizations, or any other labor organization, to bargain collectively through representatives of their own choosing and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the Act."

lishing Co. case, the Supreme Court said in the May Department Stores Co. case, 326 U.S. at page 392, 66 S.Ct. at page 213, 90 L.Ed. 145: "* * *. While the Board has been delegated initially the exclusive authority to prevent unfair labor practices, courts, which are called upon to enforce such orders by their own decrees, may examine its scope to see whether on the evidence they go so beyond the authority of the Board as to require modification as a matter of law before enforcement. Section 10(a) and (e). * * *"

While in the May Department Stores Co. case the Supreme Court struck Paragraph 1(b) of the Board's order and amended Paragraph 1(a) as suggested by petitioner here, the factual situation differs in the two cases.

In the May Department Stores Co. case the employer, persisting in its refusal to bargain with the representatives of a certified unit of a small group of its employees, took steps unilaterally to secure the approval of the National War Labor Board of a voluntary wage increase for all of its 4500 employees, including employees in the unit represented by the Union. The Board, the Circuit Court of Appeals and the Supreme Court all found that the employer's action constituted a violation of Section 8(1).[5]

Said the Supreme Court, 326 U.S. at pages 383, 384, 385, 66 S.Ct. at page 208, 90 L.Ed. 145: "* * * It is settled law that the Labor Relations Act makes it an employer's duty to bargain collectively only with the duly recognized or accredited representative of the employees. Disregard of this duty violates § 8(1) of the Act. Section 9(a). Medo Photo Supply Corp. v. National Labor Relations Board, 321 U.S. 678, 683, 684, 64 S.Ct. 830, 832, 88 L.Ed. 1007. Any other conclusion would infringe an essential principle of collective bargaining. See J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 338, 64 S.Ct. 576, 580, 88 L.Ed. 762. Employer action to bring about changes in wage scales without consultation and negotiation with the certi-

fied representative of its employees cannot, we think, logically or realistically, be distinguished from bargaining with individuals or minorities. * * * *By going ahead with wage adjustments without negotiation with the bargaining agent, it took a step which justified the conclusion of the Board as to the violation of Section 8(1).* Such unilateral action minimizes the influence of organized bargaining. It interferes with the right of self-organization by emphasizing to the employees that there is no necessity for a collective bargaining agent. * * *" (Emphasis supplied.)

In the instant case there was no such conduct, nor was there any finding by the Board of any unfair labor practice other than the refusal to bargain collectively with the Union.

It was on the basis of the refusal to bargain, which of course was in violation of Section 8(5),[6] that the Board found there was an unfair labor practice in violation of Section 8(1).

Even in the Board's complaint against the respondent, the only substantive charge was that it refused to bargain collectively with the Union. (Paragraph 10 of the Complaint.) In Paragraph 12, the Board averred that the refusal to bargain, as stated in Paragraph 10, was an unfair labor practice within the meaning of Section 8(1).

▮ Considering the salient facts in the instant case that the only unlawful practice was the refusal to bargain collectively so as to obtain a judicial determination of the validity of the Board's action, and that the record fails to disclose any evidence of any criticizable conduct on the part of the respondent, we are of the opinion that under the applicable rules, Paragraph 1(b) should be stricken.

It must be kept in mind that under Paragraph 1(a) of the order the respondent is compelled to cease and desist from refusing to bargain collectively with the Union and under Paragraph 2(a) the respondent is required to take the affirmative action of bar-

---

5 "Sec. 8. It shall be an unfair labor practice for an employer—(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7."

6 "Sec. 8. It shall be an unfair labor practice for an employer—(5) To refuse to bargain collectively with the representatives of his employees, subject to the provisions of Section 9(a)."

gaining collectively with the Union upon request.

For the reasons stated, the petition for enforcement is granted and a decree will be entered directing that the order be enforced as modified by the striking of Paragraph 1(b).