NATIONAL LABOR RELATIONS BOARD
v. GLOBE AUTOMATIC SPRINKLER
CO. OF PENNSYLVANIA.
No. 10718.

United States Court of Appeals
Third Circuit.

Argued June 3, 1952.

Decided Sept. 30, 1952.

Marcel Mallet-Prevost, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen., Counsel, A. Norman Somers, Asst. Gen. Counsel, Mary Williamson, Attys., National Labor Relations Board, Washington, D. C., on the brief), for appellant.

Richard C. Bull, Philadelphia, Pa. (White, Williams & Scott, Philadelphia, Pa., on the brief), for respondent.

Before BIGGS, Chief Judge, and KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

The National Labor Relations Board has petitioned this court[1] to enforce its Order against the respondent, Globe Automatic Sprinkler Company of Pennsylvania[2] (hereinafter called "Globe"). Jurisdiction of the Board and of this court is conceded.

The issue presented by the petition is whether the Board properly determined that Globe violated Section 8(a) (5) and (1) of the Act when, as a consequence of the filing of a decertification petition by an employee, it suspended negotiations with the Union[3] three weeks prior to the expiration of the year following its certification as the statutory bargaining representative of Globe's employees.

There is no substantial dispute as to the facts. They appear in detail in the Board's Decision and Order in 95 NLRB 253. They may be summarized as follows:

On May 4, 1949, pursuant to the terms of a consent election agreement, an election was conducted under proper supervision among respondent's production, mainte-nance and shipping employees, admittedly an appropriate bargaining unit, in order to determine whether they desired to be repre-sented by District Lodge No. 1, International Association of Machinists (hereinafter called "Union"), for the purpose of collective bargaining.

As a result of this election, the Union was formally certified on May 25, 1949, as the statutory representative of respondent's employees in the appropriate unit above de-scribed. Globe's employees in the unit num-bered between 25 and 40 persons, depending upon the volume of its business.

Following the Union's certification on May 25, 1949, Globe and the Union, on May 31, 1949, commenced contract negotiations which continued during the succeeding 11 months, until May 4, 1950. With respect to these negotiations, it may be noted paren-thetically, that while the Trial Examiner found that Globe during their course failed to bargain in good faith with the Union, the Board specifically concluded in its Decision and Order that it was not in agreement with that finding. The record discloses that although the negotiations were sub-jected to protracted delays, they were inci-dent to and characteristic of the normal bargaining processes.

On May 1, 1950, (three days before the suspension of negotiations) a decertifica-tion petition was filed by one of Globe's em-ployees and on the same day Globe was notified of that fact by an attorney for the petitioning employee with the accompany-ing statement, in writing, that he represent-ed a majority of its employees and that he had filed the petition for decertification in their behalf. The attorney further request-ed Globe not to enter into any agreement with the Union until the Board had acted upon the petition for decertification. Globe thereupon broke off negotiations with the Union, assigning as its reason the filing of the decertification petition and the request of its employees to do so.

---

1. Pursuant to Section 10(e) of the National Labor Relations Act, as amended, 61 Stat. 136, 29 U.S.C.A. § 151 et seq.

2. The respondent, in its Philadelphia, Pennsylvania, plant, engages in the manufacture, sale and distribution of automatic sprinklers, in the course of which it con-cededly makes substantial out-of-state purchases and sales.

3. District Lodge No. 1, International Association of Machinists.

On May 5, 1950, an amended petition for decertification was filed with the Board signed by every employee in the bargaining unit. The amended petition was subsequently dismissed by the Regional Director of the Board on the ground that its filing was untimely. Subsequent to this dismissal, a second decertification petition was filed on October 11, 1950, likewise signed by every member of the bargaining unit. That petition was dismissed because of the pendency of the Board's proceeding against Globe for its alleged violation of Section 8(a) (5) and (1) in suspending negotiations with the Union on May 4, 1950.

It is conceded that the filing of the decertification petitions by the employees was entirely of their own volition; that they were not coerced or influenced by Globe and that the latter was not guilty of any proscribed activities or unfair labor practices in connection therewith.

On the facts stated, the Board concluded that the filing of the decertification petition did not relieve Globe of its obligation to recognize and bargain with the Union as the exclusive representative of the employees for a period of at least one year following the Union's certification to the Board and accordingly held that Globe's refusal to bargain with the Union *on and after May 4, 1950,* was in violation of Section 8(a) (5) and (1) of the Act. It then issued the usual remedial order requiring Globe (1) to cease and desist from refusing to bargain with the Union; (2) to bargain with the Union; and (3) to post the usual notices of compliance. Globe refused to comply and the Board thereupon filed the petition for enforcement of the Order now under consideration.

The Board takes the position that when, pursuant to Section 9(c) (1) of the Act, it certifies that a union has been selected as their bargaining representative by the majority of the employees in an appropriate unit, the union acquires an exclusive and statutorily protected right to bargain with the employer on behalf of all the employees in the unit with respect to terms and conditions of employment and that such right inures to the union for at least one year following its certification. Accordingly, it contends that Globe's breaking-off of negotiations three weeks prior to the expiration of one year from the Union's certification constituted a violation of its so-called one-year rule with respect to certifications.

It is conceded by the Board that the Act does not specify the length of time the union is entitled to enjoy an exclusive status without being required to meet a claim that changed circumstances have resulted in a loss of its majority support. It asserts, however, that in administering the representation features of the Act it was faced at the outset with the problem of striking an accommodation between two basic aims of the Act: one, to provide employees with a real opportunity freely to select their bargaining representative; the other to provide the bargaining relationship, once established, with a reasonable degree of stability, and it has found that in the ordinary case one year of immunity to attack upon its majority status affords a certified union the required reasonable period of protection in which to attempt to negotiate a contract with the employer. That, says the Board, is the basis for its rule that in "the absence of unusual circumstances" [4] a "union's representative status is *conclusively* presumed for *at least one year* following certification." [5] The rule is enforced, the Board states, even where there has been a loss of the union's majority during the year period [6] and during that time it will not entertain either a new petition for certification of representatives or a petition for decertification of the incumbent union.

Failure or refusal of an employer to bargain with a union for "at least one year" following its certification constitutes an unfair labor practice, says the Board, even though, as in the instant case (1) the union has lost every one of its members; (2) such

---

4. Lift Trucks, Inc., 75 NLRB 998, 999–1001.

5. Jersey City Welding & Machine Works, Inc., 92 NLRB 510, 511.

6. Arthur A. Borchert, d/b/a West Fork Cut Glass Co., 90 NLRB 944, 945.

loss of membership cannot be attributed to any activities, proscribed or otherwise, of the employer; and (3) the employer has, in good faith and in accordance with every requirement of the Act, bargained with the union prior to the loss of its membership. The Board contends that both its "one-year rule" and its application along the lines stated have been accorded judicial sanction. It says we approved its rule "in principle" in National Labor Relations Board v. Swift & Co., 3 Cir., 1947, 162 F.2d 575, 584–585, certiorari denied 332 U.S. 791, 68 S.Ct. 101, 92 L.Ed. 373.

On that score it need only be said that in the Swift case the union's loss of majority status was due to the fact that the employer had failed to bargain for an unbroken period of approximately two years after the certification of the union. The situation and questions involved in the Swift case were not similar in any respect to the situation and issue here involved. The same may be said of the other cases cited by the Board. For example, in National Labor Relations Board v. Appalachian Electric Power Co., 4 Cir., 1944, 140 F.2d 217, 222, in less than ten weeks after the union's certification, a non-supervisory employee obtained signatures of a large majority of the employees to a petition that they no longer desired to be affiliated with the union and, as a consequence, the employer refused to continue to bargain with the union. The court ruled that "The Board therefore properly held that a *reasonable time* had not elapsed since the election and certification, and that the certification still remained in full force and effect, *under the circumstances of the instant case.*" (Emphasis sup-

plied). Similarly, in National Labor Relations Board v. Century Oxford Mfg. Corporation, 2 Cir., 1944, 140 F.2d 541, certiorari denied 323 U.S. 714, 65 S.Ct. 40, 89 L.Ed. 574, in less than six weeks after certification the employees almost unanimously presented a petition repudiating the union and the employer thereupon suspended negotiations with the union. The court, citing the Appalachian Electric Power Company case, held that a reasonable time had not elapsed since the election and certification.

In National Labor Relations Board v. Botany Worsted Mills, 3 Cir., 1943, 133 F.2d 876, a majority of the employees repudiated the union exactly one week after the election and before certification, and the employer refused to bargain as a result. No request was made by the employees for another election. We there sustained the Board. It is pertinent to note that in doing so we stated, 133 F.2d at page 882, "The employees in this case, if they wished to change their minds concerning a bargaining agent, could have asked the Board for another election. If the Board had arbitrarily refused it within a reasonable time then we might have a case where a question could be raised whether it had done its duty under the statute." That observation is significant in the light of the fact that in the instant case the members of the Union unanimously petitioned the Board for decertification and the petition was arbitrarily dismissed.

Further detailed consideration of the factual situation in a number of other cases cited by the Board would serve no useful purpose inasmuch as none of them are analogous, even in their broadest aspect, to the situation here involved.[7]

---

7. In Southern Block and Pipe Corporation, 90 NLRB 590 (1950), the union was certified on December 11, 1947. There were on-and-off negotiations between the union and the employer which culminated in an apparent agreement early in November, 1948, at which time the union approved the contract, with changes earlier proposed by the employer, and submitted it to its negotiating officers. The latter, on December 1, 1948, decided to hold in abeyance the union-approved contract and not sign it pending the outcome of decertification proceedings. The latter were not filed until December 16, 1948, more

than one year *after* the union's certification. The Board stated as a fact that the employer had " * * * contributed to producing the very situation which it urges as reason for its refusal to bargain by assisting in the preparation and filing of the decertification petition" and accordingly, under the circumstances, was in violation of Section 8(a) (1) of the Act because of its interference, restraint and coercion of its employees in the exercise of their rights as guaranteed in Section 7 of the Act.

It is apparent that the Southern Block and Pipe Corporation case affords no prec-

Nor is it necessary to dwell upon the Board's contention that its "one-year rule", as presently urged, has been accorded judicial or legislative approval. The crux of the contention as to legislative approval, is that the one-year certification rule "was well known to Congress prior to the 1947 amendments of the Act, and Congress in part codified the rule when it enacted Section 9(c) (3) of the amended Act which proscribed the holding of more than one valid election in a bargaining unit during any 12 month period." [8] (Emphasis supplied).

 As to the asserted Congressional approval of the one-year rule, it is well-settled that Congress could not be presumed to adopt an administrative construction unless it is clear, uniform and consistent and there exists "the precise conditions passed on prior to the re-enactment", U. S. v. Missouri Pacific Railroad Company, 1929, 278 U.S. 269, 280, 49 S.Ct. 133, 137, 73 L.Ed. 322. The same principle applies with respect to the courts. "The court is not bound by an administrative construction, and if that construction is not uniform and consistent, it will be taken into account only to the extent that it is supported by valid reasons." Burnet v. Chicago Portrait Co., 1932, 285 U.S. 1, 16, 52 S.Ct. 275, 281, 76 L.Ed. 587; see also Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20.

Indeed, in the Mengel Company, 80 NLRB 705, 719 (1948), the Board conceded that "none of the precedents cited, it is true, have ever defined in absolute terms the length of the 'reasonable' period within which the agency 'certification' must be given effect." The Mengel decision, it may be noted, was subsequent to the 1947 amendments to the Act.

It is readily apparent from an examination of its own decisions in prior cases that even the Board has not been too specific or definitive in its statement of the one-year certification rule. In the instant case it takes the position that the one-year rule is as inflexible, unyielding and immutable as the law of the Medes and Persians and that it has the rigidity of a statute of limitation or a statute defining jurisdiction. It took the same position in Southern Block and Pipe Corporation, 90 NLRB 590, 591 (1950) where it held " * * * an employer is obligated to bargain with a certified union *during* the certification year." (Emphasis supplied).

However, in Lift Trucks, Inc., 75 NLRB 998 (1948), the Board stated its rule as follows (p. 999):

"An employer is obligated to bargain with a certified union *for a reasonable period of time.* In the *absence of unusual circumstances,* a reasonable period of time is *customarily* held to be one year." (Emphasis supplied).

Again in The Belden Brick Co., 83 NLRB 465 (1949), the Board stated (pp. 465–66):

"The Board and the courts have frequently held that an employer is obligated to bargain with a certified union for *a reasonable period of time, customarily* for 1 year after certification. Hence, a petition for decertification filed during the year following certification of the incumbent union does not, *except under unusual circumstances which are not present here,* create a question concerning representation so as to relieve the employer of the obligation to bargain with the certified union." (Emphasis supplied).

---

edent for the Board's decision in the instant case, inasmuch as in the latter (1) the decertification petition was filed by the members of the union before the expiration of the year of certification; and (2) the employer has in no way contributed to the filing of the decertification petition.

In National Labor Relations Board v. Worcester Woolen Mills Corporation, 1 Cir., 1948, 170 F.2d 13, the employer never bargained with the union, question-

ing instead the validity of its certification. The same situation prevailed in National Labor Relations Board v. S. H. Kress & Co., 6 Cir., 1952, 194 F.2d 444.

8. Section 9(c) (3), in pertinent part, reads as follows: "No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held."

Analysis of judicial interpretations of the one-year rule discloses that the courts have never indicated approval of a rigid limitation such as is urged in the instant case. As previously pointed out, The Court of Appeals for the Fourth Circuit in National Labor Relations Board v. Appalachian Electric Power Co., supra, stated the rule to be, 140 F.2d at page 221:

> "*The operative life of a certification should be at least a reasonable time, dependent upon the circumstances of the individual case.*" (Emphasis supplied.)

In National Labor Relations Board v. Geraldine Novelty Company, 2 Cir., 1949, 173 F.2d 14, 16–17, the court in speaking of the one-year rule said:

> "Such period of stability *usually extends for about a year* in the case of a certified union without a contract * * *." (Emphasis supplied.)

The Supreme Court of the United States has never passed upon the one-year certification rule. However, in Franks Bros. Co. v. National Labor Relations Board, 1944, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020, in holding that the Board had acted within its statutory authority, in ordering the employer to bargain collectively with a union which had lost its majority after the employer had wrongfully refused to bargain with it, the court stated 321 U.S. at page 705, 64 S.Ct. at page 819:

> "* * * a bargaining relationship once rightfully established must be permitted to exist and function *for a reasonable period* in which it can be given a fair chance to succeed." (Emphasis supplied.)

■ In sum, it is apparent that the overwhelming weight of authority,[9] expressed in decisions by the National Labor Relations Board and by the courts, is (1) that "in the absence of unusual circumstances" a "reasonable period" must elapse after the certification of the union before the employer can refuse to bargain with it; and (2) "reasonable period" has been defined as "customarily" or "usually" for "about one year".[10]

It may be noted that the Board recognized the existence of "unusual circumstances" in a number of cases, among them Carson Pirie Scott & Company, 69 NLRB 935 (1946) and Jasper Wood Products Company, Inc., 72 NLRB 1306 (1947). In both cases the unions, well within a year of their certification, switched their affiliation from the Congress of Industrial Organizations (CIO) to the American Federation of Labor. The Board held in each instance that new elections must be held and that the one-year rule asserted by the CIO was inoperative because of the existence of "unusual circumstances". It is difficult to rationalize the ruling in these cases with the attitude of the Board in the instant case.

The only apparent distinction is that here the members of the union unanimously repudiated the certified union without affiliating with a new union, as was done in the Carson Pirie Scott and Jasper Wood Products cases. We can only say that it is a distinction without a difference.

9. Exceptions are the National Labor Relations Board v. Vulcan Forging Co., 6 Cir., 1951, 188 F.2d 927, 930–31, where the court held that the employees' unanimous repudiation of the union less than six weeks after its certification, terminated the union's representative status; and National Labor Relations Board v. Inter-City Advertising Co., 4 Cir., 1946, 154 F.2d 244, where it was held that when a union majority has been dissipated without fault on the part of the employer, the union no longer possessed the authority to speak for the employees and an order of the Board that required the employer to bargain with the union cannot be enforced. We expressed disagreement with the holding in the Inter-City case in National Labor Relations Board v. Swift & Co., 3 Cir., 1947, 162 F.2d 575, 584.

10. The leading National Labor Relations Board case on the subject, Matter of Kimberly-Clark Corp., 61 NLRB 90, 92 (1945), discussed the one-year rule in the following terms:

"We have consistently held, both in unfair labor practice cases involving Section 8(5) of the Act, and in cases arising under Section 9(c), that a Board election and certification must be treated as identifying the statutory bargaining agent with certainty and finality for a reasonable period of time—about a year, under ordinary circumstances."

 We approach the problem presented by the Board's petition for enforcement with the well-settled rule in mind that "The powers conferred upon this court by the National Labor Relations Act to enforce the orders of the Board are equitable in nature and may be invoked only if the relief sought is consistent with the principles of equity." National Labor Relations Board v. National Biscuit Co., 3 Cir., 1950, 185 F. 2d 123, 124.

 The Board here seeks to impose sanctions upon an employer who bargained in undisputed good faith with the certified union for a period of eleven months and one week and who only terminated the bargaining process upon the written request of its employees, coincident with their unanimous action in filing a decertification petition which was not prompted or influenced by proscribed activities on the employer's part. The record, it may be noted, discloses that the dissatisfaction of the employees with the certified union was attributable to several facts—the union took the position that its business representative was authorized to enter into a collective bargaining agreement on behalf of its members without their ratification or their approval; the proposals and counter-proposals in the course of the almost year-long bargaining were never submitted to the employees; the latter were not kept advised of the course of negotiations and no formal meetings of the union were held.

In our opinion, it would be inconsistent with the principles of equity if, under the circumstances stated, we should grant the Board's petition for enforcement.

Further, to sustain the Board's position here would be violative of the spirit and the very letter of the National Labor Relations Act. The latter, in its declaration of policy, asserts that the purpose of the Act is to protect " * * * the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." 29 U.S.C.A. § 151 et seq.

If the Board's petition for enforcement were sustained and the employer, in consonance with our order, would negotiate a contract with the union we would have a situation where the employees would be bound to work under terms and conditions fixed for them by representatives not of their own choosing. Such a situation would be intolerable no doubt to the employees, and certainly not conducive to the industrial repose sought by the Act. It would be in express violation of their lawful right under the Act to bargain collectively through a representative of their own choosing and to enjoy "full freedom of association, self-organization, and designation of representatives".

It is regrettable that in dealing with this situation the Board appears to have focused its attention solely upon the relationship, under the asserted one-year rule, between the employer and the certified union, and to have been oblivious of the lawful rights and interests of the vitally-concerned employees.

The conclusion is inescapable that the Board overlooked the salient consideration that the National Labor Relations Act was designed by the Congress to serve as a shield and not as a shackle to the millions of our employed whose welfare is the proper subject of national concern.

For the reasons stated the petition of the Board will be denied, and the Order of the Board will be set aside.