NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SWIFT AND COMPANY, d/b/a New
England Processing Unit,
Respondent.

No. 5752.

United States Court of Appeals
First Circuit.

July 21, 1961.

Peter M. Giesey, Attorney, Washington, D. C., with whom Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frederick U. Reel, Atty., Washington, D. C., were on the brief, for petitioner.

William F. Joy, Boston, Mass., with whom Carl G. Bergstedt, Catherine A. Griffin and H. Richard George, Boston, Mass., were on the brief, for respondent.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This petition for enforcement of an order of the National Labor Relations

Board raises the question of the propriety of the Board's certification of United Packinghouse Workers of America, Local 165, AFL-CIO, as the exclusive bargaining representative of two separate groups of workers in the respondent's Somerville, Massachusetts, division, called its New England Processing Unit.

The Union petitioned the Board under § 9(a) and (c) of the Act [1] for certification as the bargaining representative of all plant clerical employees, except professional employees and supervisors, in the respondent's New England Processing Unit. Simultaneously it filed a similar petition for certification as the bargaining representative of all office clerical employees, with similar exceptions, in the same establishment. The petitions were consolidated and after hearing the Board issued its Decision and Direction of Elections finding that all office clerical employees at the respondent's Somerville plant, excluding the secretary to the plant manager, constituted a unit appropriate for collective bargaining purposes, and that all plant clerical employees at the same plant, excluding the assistant foreman of the Curing Department, constituted a separate appropriate unit. Accordingly the Board directed elections and, the Union receiving a majority of the votes cast in each, certified the Union as the exclusive bargaining representative for each unit.

Thereafter the respondent refused to bargain with the Union as the representative of the employees in either unit and refused the Union's request for information as to the wages of the employees in the two units. In ensuing unfair labor practice proceedings charging refusal to bargain in violation of § 8(a) (1) and (5) of the Act the respondent took the stand that it was under no duty to bargain with the Union for the reason that the units certified by the Board were inappropriate. It urges this court to deny the Board's petition for enforcement for the same reason. Its position is that the Board erroneously included supervisors in the units it certified as appropriate, that it arbitrarily and unreasonably departed from its customary practice by including "managerial and confidential" employees in those units, and furthermore that even if the units are appropriate the Board ought not to permit the Union to represent the employees in the units because it also represents the production and maintenance employees at the same plant.

Section 2(3) of the Act excludes from the definition of "employees," that is, persons who can be included by the Board under § 9(b) in the units it may determine to be appropriate for collective bargaining purposes, "any individual employed as a supervisor." And § 2(11) defines "supervisor" as follows:

"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

The first question for consideration is whether the Board erred in including one Cogan in the Plant Clerical Unit because on the evidence it could in reason only be found either that he was a "supervisor" within the above definition of the term or else was a "confidential or managerial" employee and hence should have been excluded from the unit in accordance with the customary practice of the Board.

Cogan had been a foreman in the respondent's organization for some 24 years but about two years before the Board's unit determination the department in which he was working was eliminated and he became a clerk in the Sliced Bacon Department with the understanding that he would ultimately replace the foreman of

---

1. Labor Management Relations Act, 1947, 29 U.S.C.A. § 159(a), (c).

that department who was not in the best of health. Cogan's salary was not reduced when he transferred with the result that his pay was substantially higher than that of other clerks. The evidence as to his duties is conflicting. It is reasonably clear, however, that prior to the Board's unit determination he was learning the duties of foreman of the Sliced Bacon Department and occasionally but not always had acted as foreman in the regular foreman's absence. Otherwise he acted merely as one of the clerks whose duties are not supervisory or managerial in any actual practical sense. And there is evidence that about six months before the hearing in the unit determination proceeding Cogan was assigned additional duties as clerk in another department and thereafter had little time for supervisory duties in his own department. He admitted, however, that until 3 or 4 weeks before the hearing he had occasionally carried out the regular foreman's responsibilities but, discovering at that time that he was no longer able to do any supervision, he asked that he no longer receive the pay premiums accorded to supervisors.

Without going into greater detail it will suffice to say that we find evidence in the record considered as a whole to support the Board's ultimate conclusion that:

"Although Cogan's status is not completely free from doubt, we believe that his time is now devoted almost entirely to his clerical duties, and that any supervision he might perform is infrequent and sporadic, and is insufficient to bring him within the statutory definition of a supervisor. It is also evident that Cogan's clerical duties are insufficient to clothe him with the status of a confidential or managerial employee. We shall include him in the unit."

This court on previous occasions has considered situations comparable in a general way to Cogan's. See N. L. R. B. v. Brown & Sharpe Mfg. Co., 1 Cir., 1948, 169 F.2d 331; N. L. R. B. v. Quincy Steel Casting Co., 1 Cir., 1952, 200 F.2d 293; N. L. R. B. v. Leland-Gifford Co., 1 Cir., 1952, 200 F.2d 620, 624–626; N. L. R. B. v. Whitin Machine Works, 1 Cir., 1953, 204 F.2d 883, 886. No useful purpose would be served by repeating the discussion in those cases of the general principles involved. All we need to say is that while the Board's power to determine who is and who is not a "supervisor" within the statutory definition is not as broad as its power under the rule of Packard Motor Car Co. v. N. L. R. B., 1947, 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040, to determine the units appropriate for collective bargaining, see N. L. R. B. v. Esquire, Inc., 7 Cir., 1955, 222 F.2d 253, 256–257, nevertheless the gradations of authority "responsibly to direct" the work of others from that of general manager or other top executive to "straw boss" [2] are so infinite and subtle that of necessity a large measure of informed discretion is involved in the exercise by the Board of its primary function to determine those who as a practical matter fall within the statutory definition of a "supervisor." Cf. N. L. R. B. v. Southern Airways Co., 5 Cir., 290 F.2d 519. It is enough to say that on all the evidence in this case, determi-

2. In the early days of logging in mountainous country straw was spread upon slopes too steep for horses to hold back a sled load of logs but not so steep as to require "bridling," i. e., looping a short length of chain around a sled runner to drag underneath it, or holding the load back by means of a long rope attached to the rear of the sled and wound once or twice (snubbed) around a stump at the top of the slope to provide friction. After each passage, sometimes at full gallop to keep the horses ahead of the load, the straw was naturally displaced so a man with a pitchfork was posted at each slope to keep the straw evenly distributed. Although teamsters were men of consequence in the lumber camps, the rule was that they were not to start down a slope until the far humbler functionary with a pitchfork, using his "independent judgment," passed word that the slope was prepared. Hence the term "straw boss." Perhaps a modern counterpart would be an attendant at a company parking lot with authority to direct higher-ups in the organization with respect to parking their cars.

nation of Cogan's status as "employee" on one hand or as "supervisor" or "managerial or confidential" employee on the other, is clearly within the range of the Board's discretion.

Much the same may be said with respect to Shipping Department Clerk Robinson and Part-time Standards Checker Driscoll.

■ We turn next to the propriety of the Board's action in including one Rogers in the Office Clerical Unit.

Miss Rogers is carried on the respondent's payroll as a stenographer but she does not work with the others in that classification. Her place is in an office with two so-called "commercial men" whom she assists in "selling" the respondent's products in addition to her stenographic and similar duties. The respondent contends that the evidence that she spends some 50% of her time on "sales" makes her a "managerial" employee and for that reason ineligible in accordance with the Board's customary practice for inclusion in the Office Clerical Unit. We find no merit in the contention.

Miss Rogers does not sell in the sense of soliciting orders for the respondent's products from retail outlets such as grocery stores. Actually, only a small percentage of the respondent's products goes direct from the New England Processing Unit to independent retailers and that branch of the business is not handled by Miss Rogers but by the "commercial men." Most of the respondent's product goes to some forty sales units in its organization for sale and distribution by them to retailers and Miss Rogers' duties insofar as "sales" are concerned, are to take "orders" coming in from the sales units and to distribute products to each on the basis of available supply, pushing products in long supply and allocating products in short supply. This requires some independent judgment and entails responsibility. But Miss Rogers has nothing to do with formulating or determining company policy or managing, to any great extent certainly, the work of others. Nor does she have access to confidential information with respect to labor matters. We think it clearly within the discretion of the Board to classify her as an "employee" within the statutory definition, and not as a "managerial or confidential" employee.

We shall not stop to analyse the duties of all the other persons in the two units who were classified by the Board as "employees." It will suffice to say that considering the evidence as a whole and the deference which is to be accorded Board determinations of appropriate units, we find ample support for the Board's decision. Compare N. L. R. B. v. Armour & Co., 10 Cir., 1946, 154 F.2d 570, 169 A.L.R. 421, certiorari denied 329 U.S. 732, 67 S.Ct. 92, 91 L.Ed. 633; N. L. R. B. v. Swift & Co., 3 Cir., 1947, 162 F.2d 575, certiorari denied 332 U.S. 791, 68 S.Ct. 101, 92 L.Ed. 373; N. L. R. B. v. Swift & Co., 9 Cir., 1957, 240 F.2d 65.

■ As to the contention that the Board should not certify the same union that already represented the production and maintenance workers as the bargaining representative of the clerical units, it will be enough to say that clerical workers and production and maintenance workers in the meat packing industry are sometimes represented by the same union. N. L. R. B. v. Swift & Co., 3 Cir., 1947, 162 F.2d 575, 580; cf. N. L. R. B. v. Armour & Co., 10 Cir., 1946, supra, 154 F.2d at pages 572, 577, and that we see no such glaring conflict between the duties and responsibilities of the clerical workers to their employer and their duty as union members to their fellows in maintenance and production work as to require frustration of their wishes as to a bargaining representative.

A decree will be entered enforcing the order of the Board.