NATIONAL LABOR RELATIONS BOARD
v. MAY DEPARTMENT STORES CO.
No. 12840.

Circuit Court of Appeals, Eighth Circuit.
Dec. 20, 1944.

As Modified on Denial of Rehearing
Jan. 11, 1945.

Eugene R. Thorrens, Principal Atty., National Labor Relations Board, of Washington, D. C. (Alvin J. Rockwell, Gen. Counsel, Malcolm F. Halliday, Associate Gen. Counsel, and Frank Donner, Atty., all of Washington, D. C., and James R. Hemingway, Atty., of Chicago, Ill., all of National Labor Relations Board, on the brief), for petitioner.

Robert T. Burch, of St. Louis, Mo. (Lewis, Rice, Tucker, Allen & Chubb and Milton H. Tucker, all of St. Louis, Mo., on the brief), for respondent.

Before SANBORN, THOMAS, and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

The National Labor Relations Board has petitioned the court to enforce its order entered December 17, 1943, requiring the respondent to cease and desist from refusing to bargain collectively with St. Louis Joint Council, United Retail & Department Store Employees of America, affiliated with the C.I.O., as the exclusive representative of all its employees at its St. Louis store engaged in the busheling room, second floor, department 280, and in the busheling room, basement, department 281, including regular and extra employees in these departments, but excluding the two foremen and all other employees of the respondent; and in any other manner interfering with its employees in the exercise of the right to self-organization.

The respondent is a New York corporation owning and operating stores in several states. In St. Louis it does business under the trade name of Famous-Barr Company. Approximately 5,000 employees are engaged in operating the St. Louis store, including about 43 employees in the unit involved in this proceeding.

On June 16, 1943, in a representation proceeding under § 9(c) of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., the Board issued its decision and direction of election in which it found that the employees in the busheling departments, supra, constituted a unit appropriate for the purpose of collective bargaining. The decision provided that the names of the C.I.O. and of the A. F. of L. should be placed upon the ballot, but at the request of the A. F. of L. its name did not appear. The election was held on June 29, 1943, and of the 43 eligible voters in the busheling departments 36 votes were cast for the C.I.O. union, 1 against, and 6 did not vote.

The unfair labor practices alleged in the complaint, based upon charges of the Union, are (1) that although requested to do so the respondent has refused to bargain collectively with the Union, and (2) that in August, 1943, and subsequently, respondent took steps unilaterally to secure the necessary approval by the National War Labor Board of an adjustment of the wages of its employees at the St. Louis store. After a hearing these charges were sustained, and the order now sought to be enforced was entered.

The respondent answered the petition, (1) denying the jurisdiction of the Board and (2) alleging that the order is invalid for two additional reasons, namely, (a) because the union does not represent the employees in the busheling departments and (b) because the Board acted arbitrarily in determining the unit.

The jurisdiction of the Board is assailed for the reason, in substance, that the Famous-Barr store is not engaged in business affecting commerce within the meaning of the Act. The respondent admitted that in the operations of the Famous-Barr store it continuously causes large quantities of merchandise to be purchased and transported in interstate commerce from other states to the store in Missouri; that during the year 1942 it purchased and transported approximately $27,000,000 worth of such merchandise, approximately 70 per cent. of which was purchased and

transported to the store from points outside of Missouri; and that during the same period it sold merchandise in excess of $27,000,000 worth, of which approximately 12 per cent. was transported from the store to points outside of Missouri. These facts, together with respondent's method of carrying on business as shown by the record, establish the jurisdiction of the Board. See J. L. Brandeis & Sons v. National Labor Relations Board, 8 Cir., 142 F.2d 977, certiorari denied 65 S.Ct. 85; National Labor Relations Board v. J. L. Hudson Co., 6 Cir., 135 F.2d 380, certiorari denied 320 U.S. 740, 64 S.Ct. 40.

■ The contention that the St. Louis Joint Council, United Retail, Wholesale and Department Store Employees of America, affiliated with the Congress of Industrial Organizations, does not represent the employees in the unit found to be appropriate is without merit. The Board found that it does so represent them and the vote of the employees themselves in favor of this union as their representative for the purpose of collective bargaining was almost unanimous. The contention is based upon the assertion that none of such employees are members of the Joint Council. The Board found that "The Joint Council represents various locals of United Retail, Wholesale & Department Store Employees of America in St. Louis which admit to membership employees of the Company." The evidence shows that the employees in the unit certified in the representation proceeding are members of such a local, to-wit, Local 372; that this local is a part of the Joint Council; and that the Council is composed of the various locals in St. Louis.

Section 6 of the Act authorizes the Board to make rules and regulations necessary to carry out the provisions of the Act. Pursuant to such authority the Board on July 11, 1939, promulgated a rule reading: "A petition to investigate and certify under section 9 (c) of the Act the name or names of representatives designated or selected for the purpose of collective bargaining may be filed by an employee or any person or labor organization acting on behalf of the employees, or by an employer." 6 Cum. Supp. C.F.R., 8521. This rule was in effect when the petition for investigation was filed and when the election was held. At that time the evidence tends to show that the employees understood that the Joint Council represented them. But the respondent argues that they signed cards designating Local 372 as their representative. Frank Verderber, a member of the master committee of Local 372, testified that at the time he signed the card he knew that Local 372 was a part of the Joint Council. When asked on cross examination the question, "Have you ever authorized the St. Louis Local Joint Council to represent you?" he answered, "I think that takes care of it automatically, when I signed that first card." His testimony on this point is corroborated by other testimony and there is no contradictory testimony in the record. Further, in proceedings under § 9(c) of the Act, the petition serves no purpose other than to initiate an investigation. When the investigation results in an election the election determines the right of representation. Section 9(a) of the Act provides that "Representatives" are to be "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes"; and an election is a proper method of "selection" under the Act.

■ The respondent earnestly contends that the action of the Board in determining that the busheling departments in the St. Louis store constitute an appropriate unit for collective bargaining was arbitrary and unreasonable. It is admitted that in deciding upon an appropriate unit the action of the Board under § 9(b) is discretionary, when and so long as such action is within the powers conferred by the Act. Pittsburgh Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698, 701, affirmed 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251.

■ The respondent argues that the Board in the exercise of its discretion has laid down certain factors for its own guidance and that its arbitrary conduct is shown in that it has disregarded its own criteria for determining an appropriate unit and has not affirmatively found any facts to justify such disregard. These factors which the Board should observe are stated to be: (1) Community of interest; (2) similarity of wages, hours and working conditions; (3) functional coherence; (4) history of collective bargaining; (5) interchangeability of employees; (6) interdependence of operations; (7) eligibility to membership in the union or unions; and (8) special skills. The Board has not, of course, held these to be inclusive and indispensable criteria. Each case must be ruled by the sufficiency or insufficiency of its own facts.

After a full hearing in the representation proceeding the Board found that the employees in the two busheling departments are engaged in fitting and altering men's clothing purchased in the store, and that they are designated as fitters, markers, tailors, pressers, and finishers; that their work traditionally has been regarded as a skilled trade; that prior to 1920 these employees were members of a craft union which was a party to a collective bargaining contract with an employers' association of which respondent was a member. Since 1920 the respondent has recognized no union as the representative of these employees, although for many years it has recognized craft unions as the representatives of teamsters, electricians, carpenters, painters, and upholsterers.

The Board found, also, that the parties all agree that the optimum unit for collective bargaining would include substantially all non-supervisory employees of the store, and concluded:

"Assuming, without deciding, that a store-wide, industrial unit will best effectuate the purposes of the Act, we note that no labor organization claims to represent the employees in such a unit. We believe that collective bargaining should be made an immediate possibility for the employees in the busheling rooms without requiring them to await the uncertain date when the employees may be organized in a larger unit. We find accordingly that the employees in the busheling rooms constitute an appropriate unit. However, our finding in this respect does not preclude a later determination at another stage of self-organization that a larger unit is appropriate."

The respondent contended before the Board, as it does here, that the two busheling departments do not constitute an appropriate unit because it fails to include employees in the women's alteration department. Among other things the Board found that although there is a high degree of similarity in the work done in these departments there is historically a sharp demarcation between the trades involved and that traditionally such workers have been represented by separate craft unions.

We have read the record carefully, and, notwithstanding the contention of the respondent, all these facts found by the Board are abundantly supported by evidence. Since, therefore, the Board's decision upon this point has "warrant in the record"

and a "reasonable basis in law," it is not arbitrary and must be accepted by this court. National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851.

We conclude that respondent was not justified in refusing to bargain collectively with the Union on the ground either that the unit certified by the Board was not an appropriate unit or that the Union did not represent that unit.

The respondent further objects to the inclusion of paragraph 1(b) in the order sought to be enforced. Paragraph 1(b) directs respondent to cease and desist from "in any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization", etc.

The Board is without power to restrain generally unlawful practices not found to exist or to be related to proven unlawful conduct, but the Board is free to restrain all unfair labor practices found to exist. National Labor Relations Board v. Express Publishing Company, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930.

In this instance the complaint alleged and the Board found that on or about August 31, 1943, the respondent took steps unilaterally to secure the approval by the National War Labor Board of a voluntary wage or salary adjustment affecting the salaries of approximately 4,530 employees in its St. Louis store, including employees in the unit represented by the Union, and that the action of the respondent in this connection was an unfair labor practice. This is the type of unfair labor practice sought to be restrained by paragraph 1(b) of the order.

The respondent argues that in making application for approval of a general salary adjustment to the War Labor Board it did only what it had a lawful right to do and that the Union has no just or legal ground for complaint. The Board found that respondent's action under all the circumstances may reasonably be said to have undermined the Union among employees for whom it had been certified as bargaining representative, and to have discouraged employees generally in their union affiliation, thereby violating § 8(1) of the Act. The validity of paragraph 1(b) of the order depends, therefore, upon whether the facts in evidence warrant the inference which the Board has drawn therefrom.

The fact situation relevant to this issue is shown in the record and reflected in the findings of the Board. During the entire period under consideration the C.I.O. and the A.F. of L. labor unions were engaged in carrying on a competitive campaign for membership among all the employees of the store. On March 13, 1943, the St. Louis Joint Council, C.I.O., filed its petition for investigation in this proceeding under § 9(c) of the Act; on June 16, 1943, an election was ordered; on June 29, 1943, the election was held, resulting in 36 ballots for the Union and 1 against; and on July 12, 1943, the Board certified the Union as representative of the unit for collective bargaining.

On July 19, 1943, the respondent refused to bargain with the Union on the ground that the employees in the busheling departments do not constitute an appropriate unit.

On August 30, 1943, the respondent, without consulting the Union, made application to the National War Labor Board for approval of a voluntary wage adjustment with 4,530 of the employees in the store receiving salaries or wages of less than $2,600 a year, including those represented by the Union, but excluding the craft unions named above with which it had contracts for collective bargaining. In the letter transmitting the application respondent said:

"The St. Louis Joint Council, United Retail, Wholesale and Department Store Employees of America, C.I.O., claims to represent the employees in the busheling rooms of the store. * * * We have not recognized this Union and have not bargained with it. * * *

"We do not believe that * * * the organization * * * have [has] any interest whatever in the enclosed application. However, if the organization named * * * should object to the inclusion of Departments 280 and 281 in the application, you are advised that said application may be considered as having been amended so as to exclude these employees from the application."

In the same letter respondent states:

"The application which covers the employees at the store shows that we have Union contracts and working agreements which cover certain craftsmen, including electricians, painters, carpenters and plasterers. These employees, being covered by collective bargaining agreements, are excluded from this application."

On September 1, 1943, respondent through its superintendent of employment announced to the employees over its public address system the filing of the application.

On September 3, 1943, the Union filed a charge that respondent had refused to bargain with it and had filed the unilateral application described above.

On September 11, 1943, Fred Z. Salomon, respondent's vice president, delivered a speech to the employees of the store over the public address system in which he said:

"On September 1st when we announced to you that the Famous-Barr Company had applied for permission to grant a general salary increase retroactive to August 2d, we told you that we would keep you informed as to the progress of our application; we have no news as to the progress of the application and we did not expect to talk to you again on the subject as soon as this, and still less did we think it would be necessary to make such a statement as we now have to make.

*    *    *    *    *    *    *

"We have filed these applications in good faith and will do everything we can to secure their approval as soon as possible. We sincerely hope that nothing will occur which will delay or obstruct or prevent this approval."

Considering the chronology of these events, and particularly the date of the filing of the application with the National War Labor Board so shortly after the certification of the Union and the refusal of respondent to bargain with it, we think the finding of the Board that the respondent's conduct constituted an unfair labor practice is supported by evidence.

We take it that the law applicable to the situation is well settled. The National Labor Relations Act makes it the duty of the employer to bargain collectively with the chosen representatives of his employees. Medo Photo Supply Corp. v. National Labor Relations Board, 321 U.S. 678, 683, 64 S.Ct. 830; and since the obligation is exclusive it exacts "the negative duty to treat with no other." National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 44, 57 S.Ct. 615, 628, 81 L.Ed. 893, 108 A.L.R. 1352.

The employer can not disregard a certification by the Board. The certificate is valid until declared invalid by the court or replaced by the Board. National Labor Relations Board v. Appalachian Electric

Power Co., 4 Cir., 140 F.2d 217, 222. The refusal of the employer to recognize the certificate does not excuse compliance at least for a reasonable time. Valley Mould & Iron Corporation v. National Labor Relations Board, 7 Cir., 116 F.2d 760; National Labor Relations Board v. Carlisle Lumber Co., 9 Cir., 99 F.2d 533, 541.

It has long been settled that the findings of the Board are conclusive upon reviewing courts when supported by evidence; and inferences from the evidence are to be drawn by the Board and not by the courts, except as to qusetions of law, and upon such questions, the experienced judgment of the Board is entitled to great weight. Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817; National Labor Relations Board v. Southern Bell Telephone & Telegraph Co., 319 U.S. 50, 60, 63 S.Ct. 905, 87 L. Ed. 1250; National Labor Relations Board v. Nevada Consol. Copper Corp., 316 U. S. 105, 106-107, 62 S.Ct. 960, 86 L.Ed. 1305; Elastic Stop Nut Corp. v. National Labor Relations Board, 8 Cir., 142 F.2d 371, 380. Courts of Appeals can not search "for evidence to support other conflicting inferences and conclusions which the judges or the litigants may consider more reasonable or desirable." Commissioner of Internal Revenue v. Scottish American Inv. Co., 65 S.Ct. 169, 171. Compare Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 501, 64 S.Ct. 239.

A voluntary wage increase without collective bargaining when the employees are organized and have selected a bargaining agent may be found to be an unfair labor practice. National Labor Relations Board v. Christian Board of Publication, 8 Cir., 113 F.2d 678, 681, 683; Wilson & Co., Inc., v. National Labor Relations Board, 8 Cir., 115 F.2d 759, 763; Singer Mfg. Co. v. National Labor Relations Board, 7 Cir., 119 F.2d 131, 136, certiorari denied 313 U.S. 595, 61 S.Ct. 1119, 85 L.Ed. 1549; National Labor Relations Board v. Barrett Co., 7 Cir., 135 F.2d 959, 961; Great Southern Trucking Co. v. National Labor Relations Board, 4 Cir., 127 F.2d 180, 186, certiorari denied 317 U.S. 652, 63 S.Ct. 48, 87 L.Ed. 524. Such unilateral action on the part of an employer is evidence of an intentional disregard of the National Labor Relations Act; and, in this case, it sustains the inference and conclusion of the Board that such action undermined the union among the employees for whom it had been certified as bargaining representative and discouraged employees generally in their union affiliation.

The order of the Board will be enforced.

### On Petition for Rehearing.

Since the unfair labor practices found by the Board to exist related only to the employees in the busheling rooms and not to the other employees in the store of respondent paragraph 1(b) of the order of the National Labor Relations Board is too broad. This paragraph will be, and is by the Court hereby, modified to read as follows: "(b) In any other manner interfering with, restraining, or coercing its employees who are referred to in paragraph 1(a) in the exercise of their right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection, as guaranteed in Section 7 of the National Labor Relations Act." And as so modified the order of the Board will be enforced.

The petition for rehearing filed by respondent is denied.