## L. A. YOUNG SPRING & WIRE CORPORA-TION v. NATIONAL LABOR RELA-TIONS BOARD.

### No. 9397.

United States Court of Appeals
District of Columbia.

Argued May 28, 1947.

Decided Sept. 29, 1947.

Mr. Bethel B. Kelley, of Detroit, Mich., for petitioner.

Mr. Morris. P. Glushien, Associate General Counsel, National Labor Relations Board, of Washington, D. C., with whom Mr. A. Norman Somers, Assistant General Counsel, National Labor Relations Board, of Washington, D. C., was on the brief, for respondent.

Before GRONER, Chief Justice, and CLARK and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

On August 26, 1946, the National Labor Relations Board ordered the L. A. Young Spring & Wire Corporation to cease and desist from what it had held to be unfair labor practices, and to bargain collectively concerning wages and other conditions of employment with Chapter No. 155, Foremen's Association of America. That union had theretofore been certified by the Board as the exclusive bargaining agent of the foremen and assistant foremen in the company's Los Angeles plant. The company declined to comply, and petitioned this court to review and set aside the Board's order on the ground that its supervisory personnel were not employees within the meaning of that term as used in § 2(3) of the National Labor Relations Act[1] and so were not covered by the Act.

In answering, the Labor Board denied the petitioner's contention. It prayed that we enter a decree directing the enforcement of its order.

The privileges and benefits of the National Labor Relations Act are conferred upon

[1] 49 Stat. 449, 29 U.S.C.A. § 151 et seq.

"employees." The Supreme Court of the United States has pointed out that "§ 2(3) of the Act, so far as relevant, [to the case then being considered] provides 'The term "employee" shall include any employee * * *.' 49 Stat. 450." Packard Motor Car Co. v. National Labor Relations Board, 330 U.S. 485, 67 S.Ct. 789, 791. In the course of its opinion the Supreme Court said, "And we see no basis in this Act whatever for holding that foremen are forbidden the protection of the Act when they take collective action to protect their collective interests," and later said, "But there is nothing in the Act which indicates that Congress intended to deny its benefits to foremen as employees, if they choose to believe that their interests as employees would be better served by organization than by individual competition."

The Labor Board relies upon the Packard case as decisive of the appeal now before us. The petitioner, on the other hand, presses upon us the argument that the facts of this case with respect to the duties and authority of foremen differ so widely from comparable facts in the Packard case that the Supreme Court's decision there is inapplicable here. But regardless of factual differences between that case and this, it cannot be denied that the foremen here involved, no matter to what extent they act in the interest of the employer, are themselves employees, as the Supreme Court said of the Packard foremen, "both in the most technical sense at common law as well as in common acceptance of the term, * * *." Consequently it is our view that, except for intervening legislation, the Packard case would imperatively require us to decree the enforcement of the Board's order.

But after this petition for review was filed and while it was pending before us, the Congress enacted the Labor Management Relations Act, 1947, (Public Law No. 101, 80th Congress, 1st Session, Chapter 120), commonly known as the Taft-Hartley Act. This statute qualifies the heretofore unqualified statement of § 2(3) of the original National Labor Relations Act to the effect that the term "employee" shall include every employee, by providing that "The term 'employee' * * * shall not include * * * any individual employed as a supervisor" [§ 2(3) Taft-Hartley Act]. Section 2(11) of the new enactment is as follows:

"(11) The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

The purpose of this amendment to the National Labor Relations Act is emphasized by § 14(a) of the Taft-Hartley Act, which is as follows:

"Sec. 14. (a) Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization, but no employer subject to this Act shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining."

Before the adoption of this amendatory legislation, it was of course true, as the Supreme Court said in the Packard opinion, that there was nothing in the National Labor Relations Act which indicated that Congress intended to deny its benefits to foremen as employees. It is now unmistakably clear, however, that the 80th Congress intended to deny, and has denied, the benefits of the Act to "supervisors."[2]

---

[2] The report concerning the bill which became the Taft-Hartley Act made by the Committee on Labor and Public Welfare to the Senate of the United States (Report No. 105 to accompany S. 1126, 80th Congress, 1st Session) includes the following:

"A recent development which probably more than any other single factor has upset any real balance of power in the collective-bargaining process has been the successful efforts of labor organizations to invoke the Wagner Act for covering supervisory personnel, traditionally regarded as part of management, into organizations composed of or subservient to the unions of the very men they were hired to supervise. It was not until 1945,

■ In these circumstances it is the duty of this court in disposing of this matter to apply the law as it now exists. Chief Justice Marshall, writing for the Supreme Court, in December, 1801, in United States v. The Schooner Peggy, 1 Cranch 103, 110, 2 L.Ed. 49, said:

"It is, in the general, true, that the province of an appellate court is only to inquire whether a judgment, when rendered, was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied."

This rule has been followed consistently. Typical of succeeding opinions are: Dinsmore v. Southern Express Co., 183 U.S. 115, 22 S.Ct. 45, 46 L.Ed. 111; Gulf, Colorado & Santa Fe Ry. Co. v. Dennis, 224 U. S. 503, 506, 32 S.Ct. 542, 56 L.Ed. 860; Watts, Watts & Co. v. Unione Austriaca, etc., 248 U.S. 9, 21, 39 S.Ct. 1, 63 L.Ed. 100, 3 A.L.R. 323; American Steel Foundries v. Tri-City Central Trade Council, 257 U. S. 184, 42 S.Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360; Carpenter v. Wabash Ry. Co., 309 U.S. 23, 60 S.Ct. 416, 84 L.Ed. 558; Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327; Ziffrin, Inc. v. United States, 318 U.S. 73, 78, 63 S.Ct. 465, 87 L.Ed. 621; Ruppert v. Ruppert, 77 U.S.App.D.C. 65, 134 F.2d 497; Schaff v. R. W. Claxton, Inc., 79 U.S.App. D.C. 207, 144 F.2d 532.

■ Since the statute as now amended is to be applied, we shall set aside the order of the respondent Board which, if allowed to stand, would operate in futuro in a manner contrary to the amended statute. An appropriate order to that effect will be entered.

---

after several changes in position, that the National Labor Relations Board itself by divided vote finally decided that supervisory employees were covered by the National Labor Relations Act. This construction was recently upheld in the Supreme Court in the Packard Motor Car case, 330 U.S. 485, 67 S.Ct. 789. It should be noted that the majority of the Court in this case did not approve the policy of the Board's doctrine but, in the absence of any specific limitation upon the word 'employee' in the Wagner Act, merely held that the Board had power to reach such a conclusion. This means, as Mr. Justice Douglas pointed out in his dissenting opinion—and as Board counsel conceded in argument—that unless Congress amends the act in this respect its processes can be used to unionize even vice presidents since they are not specifically exempted from the category of 'employees.'
"The Board has placed the issue squarely up to the Congress by stating in one of its recent decisions:
" 'So long as the Congress of the United States imposes no limitation on their choice, it is not for us to do so (Jones & Laughlin Steel Corp., 71 N.L.R.B. 1261).'
"The folly of permitting a continuation of this policy is dramatically illustrated by what has happened in the captive mines of the Jones & Laughlin Steel Corp. since supervisory employees were organized by the United Mine Workers under the protection of the act. Discipline slips issued by the underground supervisors in these mines have fallen off by two-thirds and the accident rate in each mine has doubled. (See testimony of H. Parker Sharp, hearings on S. 55 and S. J. Res. 22, vol. 1, p. 339, Re Jones and Laughlin Steel Corp., 71 N.L.R.B. 1261.)"
The report of the Committee on Education and Labor of the House of Representatives concerning the bill (Report No. 245 to accompany H. R. 3020, 80th Congress, 1st Session) contains the following paragraph:
"If management is to be free to manage American industry as in the past and to produce the goods on which depends our strength in war and our standard of living always, then *Congress must exclude foremen from the operation of the Labor Act, not only when they organize into unions of the rank and file and into unions affiliated with those of the rank and file, but also when they organize into unions that claim to be independent of the unions of the rank and file.*" (Committee's emphasis.)