**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ESQUIRE, Inc. (Coronet Instructional Films Division), Respondent.**

**No. 11318.**

United States Court of Appeals Seventh Circuit.

April 29, 1955.

---

David P. Findling, Associate Gen. Counsel, Julius Topol, Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, William J. Avrutis, Washington, D. C., Attys., National Labor Relations Board, for petitioner.

Herman Smith, Sidney R. Zatz, Walter N. Kaufman, Chicago, Ill., for respondent.

Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This case is here on the National Labor Relations Board's petition for enforcement of its order directing Respondent, Esquire, Inc. (Coronet Instructional Films Division), to bargain, upon request, with Local 476, Studio Mechanics of the International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators of the United States and Canada. The decision and order of the Board appear at 109 N.L.R.B. No. 76.

The arguments raised by the Respondent Company in opposition to enforcement of the Board's order, and the principal questions before us, involve the appropriateness of the unit established by the Board, and the alleged supervisory status of two persons who were included in the unit.

The Union requested recognition as the representative of certain employees. After a hearing the Board ordered an election within a unit of "motion picture studio production employees." Of the 13 votes, 4 were in favor of representation, 4 were against, and 5 votes were challenged. After an investigation the Board excluded the votes of Ann Whitley and Nancy Dana, clerical workers, and Fred Norman, a truck driver. The Board counted the votes of Paul Seitzinger and Bernard Montgomery, determining that they were not supervisors as claimed by the Company. When Seitzinger's and Montgomery's votes were counted, the Union won the election 6 to 4. The Company refused to bargain with the Union, and the Union charged it with an unfair labor practice under Section 8(a) (1) and (5) of the Act. 29 U.S.C.A. § 158 (a) (1) and (5). The result was the order to bargain for which the Board here seeks enforcement.

In its argument for the inclusion in the unit of clericals Whitley and Dana and truck driver Norman, the Respondent Company takes the position that these persons can be found by us to be includable as a matter of law. At pages 49 and 50 of its brief the Respondent says: "The issue in this case is not whether the Board may, in its informed discretion, exclude all clericals from a production unit; nor * * * abandon * * * its established policy of including plant clericals in a unit of production employees. The Board has not sought to do any of those things in this case. * * * The only issue was one of fact as to whether or not Whitley and Dana, under established and 'settled' Board standards, were 'office' clericals." The Company claims that the Board always includes "plant clericals" with production employees. We are apparently urged to hold that the evidence supports no proposition other than that Whitley and Dana are "plant clericals," as the Board has already defined that term, and therefore must necessarily be included with the unit of production workers. Respondent has misconceived the administrative function of the Board in determining an appropriate bargaining unit.

Section 9(b) of the Act, 29 U.S.C.A. § 159(b), puts selection of "the unit appropriate for the purposes of collective bargaining" solely in the hands of the Board. The only general standard es-

256

tablished by Congress is that the choice "assure to employees the fullest freedom in exercising the rights guaranteed by [the Act]."

The Supreme Court has made itself very clear on the subject. In Packard Motor Car Co. v. N. L. R. B., 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040, the Court said: "The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision." The Courts of Appeals have expressed the Board's power and the limitation on their review of it in various ways: "Such determination is binding upon us unless the Board has abused this discretion or otherwise violated the mandate of the statute", N. L. R. B. v. West Texas Utilities Co., 5 Cir., 214 F.2d 732, 734; "Its [the Board's] determinations in these respects are binding upon reviewing courts if grounded in reasonableness", N. L. R. B. v. Swift & Co., 3 Cir., 162 F.2d 575, 581; " * * * the action of the Board under § 9(b) is discretionary, when and so long as such action is within the powers conferred by the Act", N. L. R. B. v. May Dept. Stores Co., 8 Cir., 146 F.2d 66, 68; " * * * unless the decision of the Board as to the appropriate unit passes the bounds of permissive discretion of the administrative body in the particular case, the court cannot interfere in such matter", N. L. R. B. v. Lettie Lee, 9 Cir., 140 F.2d 243, 248.

The Board's function in defining an appropriate bargaining unit cannot be reduced to findings of fact and conclusions of law. So many factors can influence the choice and individual situations are so varying that it would be impossible for even the Board to formulate rules that could be rigidly applied in all situations. The type of argument made here by Respondent was apparently also urged in N. L. R. B. v. May Dept. Stores Co., supra. In that case, 146 F.2d at page 68, the court, in speaking of certain general standards which it was claimed had been fixed by the Board for its guidance and should, therefore, be used in its determi-

nation of bargaining units, said: "The Board has not, of course, held these to be inclusive and indispensable criteria. Each case must be ruled by the sufficiency or insufficiency of its own facts."

The 1947 Amendment to the Act, 61 Stat. 146, added the italicized words to Section 10(e), 29 U.S.C.A. § 160(e): "The findings of the Board with respect to questions of fact if supported by *substantial* evidence *on the record considered as a whole* shall be conclusive." The Supreme Court held that this change meant that courts " * * * must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. * * * Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456.

■■■ This holding has reaffirmed the court's duty to review the record as a whole, including all the evidence, and to base its judgments only on the end result of the review and not on isolated factual showings. As concerns choice of the bargaining unit, the prerogative of the Board has not been changed. Once the entire record has been reviewed and each piece of evidence seen in the light of all the other evidence, the court must still find that the Board has acted arbitrarily (without a rational basis), or from bias, or prejudice, before it can reverse the Board's determination. Judge Bazelon recognized this in Mueller Brass Co. v. N. L. R. B., 86 U.S.App.D.C. 153, 180 F.2d 402, 404: "Although Congress carefully scrutinized the unit-selection problem in 1947, and made some changes designed to encourage crafts, it apparently intended to restate then existing law with regard to discretion in determining the 'appropriate' unit."

■■ The respondent's argument concerning the two clerical employees, Whitley and Dana, is based on an invalid premise. It goes to considerable lengths to show that these two are "plant clericals" rather than "office clericals." The

fact remains that they were primarily clerical workers and their exclusion by the Board from the bargaining unit was within the Board's discretion. The fallacy of the Company's approach is illustrated by F. H. McGraw & Co., 106 N.L.R.B. (No. 105, 1953) in which office and plant clericals were grouped together in a unit separate from production employees. Of course, the case can be distinguished from this one on its facts, as can most cases, but it demonstrates the mistake of trying to confine the Board to general rules with regard to unit determination.

■ The Company argues that clericals Whitley and Dana should be included in the unit of production workers both because their clerical work relates to production (production control), and because they spend 20 to 25 per cent of their time in actual production work (painting and building sets, etc.). The error of Respondent's approach here is demonstrated by reference to Helms Motor Express, Inc., 107 N.L.R.B. (No. 32, 1953), where rate clerks, who spend 75 per cent of their time writing freight rates (certainly *connected* with freight handling), and 25 per cent of their time handling freight, were classified by the Board as *office* clericals. The decisions of the Board on bargaining unit designation cannot be generalized, and no generalizations should be attempted. Our only concern should be whether or not the Board abused its discretion by acting without rational cause or from improper motives.

Respondent, for purposes of its argument, chooses to separate its business into two parts: the studio in Glenview which does only production work, and the offices in Chicago which do only clerical work. The fact that Whitley and Dana work in an office *in the studio* means to the Respondent that they are doing production work and should therefore be included in a unit with production workers. The Board, on the other hand, is concerned only with the studio where all of the members of the unit work. The Board's comparison is made between the production workers who work in the part of the studio where the pictures are taken, and the clericals who work in the studio office. Although, in light of the fact that the record does not disclose an abuse of discretion by the Board, this discussion is academic, we think that the Board's decision seems more logical.

The Board, at 105 N.L.R.B. No. 14 and 106 N.L.R.B. No. 208, fully reviewed the situation in the studio and the arguments of the Respondent. The decision to exclude Whitley and Dana was made because of the history of bargaining in the motion picture industry and because the great bulk of their work is clerical and done in the front office of the studio. Although the Company is able to show reasons for reaching the opposite result, its evidence does not lessen the effect of the facts upon which the Board relied. The Board acted within the scope of its authority.

■ Fred Norman, the truck driver, was excluded because his work was done almost entirely outside of the studio, and was of a very different nature than that of a studio production worker. Here again the facts do not show abuse of discretion by the Board.

■■ In contrast to unit determination, the Board does not have any greater discretion in determining supervisory status than it does in making any other finding of fact, even though its finding in this regard does have an effect on the membership of the bargaining unit. The Act describes supervisors in detail, and the Board can only find as a matter of fact that the individual in question falls within or without the statutory definition. See note, 11 A.L.R.2d 249.

The 1947 Amendment to the Act denied its benefits to "supervisors." 29 U.S.C.A. §§ 152(3) and 164(a); L. A. Young Spring & Wire Corp. v. N. L. R. B., 82 U.S.App.D.C. 327, 163 F.2d 905, certiorari denied 333 U.S. 837, 68 S.Ct.

607, 92 L.Ed. 1121. Section 2(11) specifically defines "supervisors" as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees * * *." 29 U.S.C.A. § 152(11). Respondent claims that Seitzinger and Montgomery are within this definition of supervisor. It argues that Seitzinger has the power to transfer other employees, can assign work to them, and has more background experience for his job than do the others.

The claims of power to transfer and power to direct other employes both stem from Seitzinger's relation to Naval, the former boom man. Seitzinger is a "sound mixer" and, through ear phones, hears the sounds as they are being recorded during a picture taking sequence. Part of his job is to signal the man operating the boom microphone when it is not picking up the sound properly. The Board decided, and we agree with it, that this was not assigning or directing an employee within the meaning of Section 2(11).

Montgomery is a set designer. He is primarily responsible for seeing that the proper set is ready when a particular picture is to be photographed. He does most of the set construction himself, but he testified that Trojan (prop man) and Naval (electrician) work with him. He was repeatedly asked whether or not he directed or supervised the work of these two. His answer was always, "No." When Trojan was asked if he worked under Montgomery's supervision, he answered: "I work with him. I suggest things to do just as much as he does. I think we are about equal on that." (Board's Appendix page 124.) The fact that Montgomery attended "production meetings" does not indicate that he was a supervisor. He drafted the set designs which were discussed at these meetings. Trojan also attended these meetings and there is no question about his status as an employee. The Respondent's evidence did not lessen the effect of the substantial factual showing which was the basis of the Board's decision that Seitzinger and Montgomery were not supervisors.

·The Board's order will be enforced.