274 F.2d 564
 107 U.S.App.D.C. 55
 CARPENTERS DISTRICT COUNCIL OF MILWAUKEE COUNTY AND VICINITY
of the UNITED BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA, AFL-CIO, and its
Agent, Henry Kamoske, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 14727.
 United States Court of Appeals District of Columbia Circuit.
 Argued April 30, 1959.
Decided July 9, 1959.
 
 Messrs. David Leo Uelmen, Milwaukee, Wis., and Bernard Dunau, Washington, D.C., for petitioners.
 Mr. Duane B. Beeson, Atty., N.L.R.B., of the bar of the Supreme Court of California, pro hac vice, by special leave of court, with whom Messrs. Jerome D. Fenton, Gen. Counsel, at the time the brief was filed, Thomas J. McDermott, Assoc. Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., were on the brief, for respondent. Mr. Allison W. Brown, Jr., Atty., N.L.R.B., also entered an appearance for respondent.
 Before PRETTYMAN, Chief Judge, and EDGERTON and BAZELON, Circuit judges.
 BAZELON, Circuit Judge.
 
 
 1
 Petitioners challenge an order of the National Labor Relations Board[1] which directs them to cease and desist from certain activities which the Board found violative of 8(b)(4)(A) of the National Labor Relations Act.[2]
 
 
 2
 Briefly, the record discloses the following pertinent facts. Miller, the carpentry subcontractor for the construction of two apartment buildings, had assigned a foreman, Adams, and three or four carpenters to the project. All, including Miller, were members of the Carpenters District Council of Milwaukee County and Vicinity of the United Brotherhood of Carpenters and Joiners of America, AFL-CIO (hereafter District Council). The District Council rules provided that 'Members shall not install or erect trim, millwork or fixtures that do not bear the label or stamp of the United Brotherhood of Carpenters & Joiners of America.' Each member was charged with the duty of preferring written charges against fellow members who violated the rules. The rules were enforceable by fine or expulsion.
 
 
 3
 Kitchen cabinets manufactured by the Del-Mar Cabinet Company had been delivered to the apartment project for installation by Miller's crew. Those cabinets bore the label of a union not recognized by the United Brotherhood. When petitioner Kamoske, a business representative of the District Council, learned of this during a routine visit to the project, he told Adams not to install the cabinets because they did not bear the United Brotherhood label. Adms passed this information on to the carpenters in his crew because he 'thought they should know.' There was no testimony from Kamoske or Adams or from any other source tending to show whether in fact Kamoske's statement that the cabinets should not be installed was meant by Kamoske, and treated by Adams, as a directive to be conveyed to union members, or as a call for employer cooperation.
 
 
 4
 The Board held (in a 2-1 decision) that Kamoske's action constituted a violation of 8(b)(4)(A). This provision 'forbids a union to induce employees to strike against or to refuse to handle goods for their employer when an object is to force him or another person to cease doing business with some third party.' Local 1976, United Brotherhood of Carpenters, etc. v. National Labor Relations Board, 1958, 357 U.S. 93, 98, 78 S.Ct. 1011, 1015, 2 L.Ed.2d 1086. However, 'a union is free to approach an employer to persuade hom to engage in a boycott, so long as it refrains from the specifically prohibited means of coercion through inducement of employees.' Id., 357 U.S. at page 99, 78 S.Ct. at page 1016.
 
 
 5
 It is undisputed that Adams, as a 'supervisor,' was not an 'employee' within the meaning of 2(3) of the Act.[3] Therefore, a necessary predicate for its conclusion that Kamoske and the District Council had violated the Act was the Board's finding that Adams had merely acted as a 'medium of transmission' to Miller's employees of Kamoske's order not to install the Del-Mar cabinets. Kamoske and the District Council were held responsible for Adams' transmission of Kamoske's order as the 'natural and foreseeable consequence' of Kamoske's action (cf. Radio Officers' Union, etc., A.F.L. v. National Labor Relations Board, 1954, 347 U.S. 17, 45, 74 S.Ct. 323, 98 L.Ed. 455). In reaching this conclusion, the Board relied not upon the nature of Kamoske's language itself, which was apparently viewed as equivocal, nor upon any actual understanding between Kamoske and Adams, but rather upon the presumed effect of Adams' obligations as a union member.
 
 
 6
 In the absence of evidence, as noted above, tending to show that Adams and Kamoske regarded Kamoske's words as a directive to be conveyed to unionmember employees, we are constrained to hold that the statement must be viewed as an attempt to enlist the aid of Miller, the employer, through Adams, as his representative. This view rests upon our analysis of the congressional purpose in enacting 2(3) (and its companion provision, 14(a))[4] in 1947. Congress was aware of the potential conflict between the obligations of foremen as representatives of their employers, on the one hand, and as union members, on the other. Section 2(3) evidence its intent to make the obligations to the employer paramount. That provision excepts foremen from the protection of the Act. Its purpose was to give the employer a free hand to discharge foremen as a means of ensuring their undivided loyalty, in spite of any union obligations. See H.Rep.No.245, 80th Cong., 1st Sess. 14-17 (1947); S.Rep.No.105, 80th Cong., 1st Sess. 3-5 (1947); L. A. Young Spring & Wire Corp. v. National Labor Relations Board, 1947, 82 U.S.App.D.C. 327, 163 F.2d 905, certiorari denied 1948, 333 U.S. 837, 68 S.Ct. 607, 92 L.Ed. 1121.
 
 
 7
 In the absence of any evidence to the contrary, we should assume that this employer prerogative has had the effect which Congress contemplated. Therefore, we are unable to uphold the Board's conclusion that the 'natural and foreseeable consequence' of Kamoske's statement to Adams was that Adams, because of his union obligations, would ignore his role as a representative of Miller and become merely a 'medium of transmission' of Kamoske's order to Miller's employees. But see National Labor Relations Board v. Local 1976, United Brotherhood of Carpenters, etc., 9 Cir., 1957, 241 F.2d 147, 156, affirmed on other grounds 1958, 357 U.S. 93, 96, note 1, 78 S.Ct. 1011, 2 L.Ed.2d 1186.
 
 
 8
 We think, however, that if evidence necessary to sustain the Board's conclusion is available, the Board should have the opportunity to present it in further supplementary proceedings. We therefore set aside the Board's order and remand the case for further supplementary proceedings or dismissal of the complaint as the Board shall determine.
 
 
 9
 In light of this disposition, the Board's request for enforcement of its order is dismissed as moot.
 
 
 10
 So ordered.
 
 
 11
 PRETTYMAN, Chief Judge.
 
 
 12
 I dissent. The pivotal question is whether, when Kamoske spoke to Adams, twice in the presence of Awve, he was addressing Adams as a policy-making participant in management or as a union member bound by union requirements. That was a question of fact. The Board decided it. There was ample evidence to support the finding, in my view. One of the only three carpenters on the job (Awve) was present during both conversations. Adams repeatedly testified that Kamoske told 'us'. Kamoske spoke peremptorily-- 'He told us not to hang the cabinets'. The language was certainly not that of a petition for a change in management policy. The union's requirement of its members was unequivocal. I would affirm the Board's findings as supported by substantial evidence.
 
 
 
 [1]
 121 N.L.R.B. No. 140, Oct. 1, 1958
 
 
 [2]
 61 Stat. 141 (1947), 29 U.S.C.A. 158(b)(4)(A)
 
 
 [3]
 National Labor Relations Act, 2(3), 61 Stat. 137 (1947), 29 U.S.C.A. 152(3) (1952)
 Adams testified that Kamoske told 'us' not to hang the cabinets, and that a carpenter-employee, Awve, was present. But Awve's presence gives no support to the Board's order. The Board did not even find that Awve heard what Kamoske said. In any event, the Board did not base its decision on that circumstance. See Securities and Exchange Comm. v. Chenery Corp., 1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626.
 
 
 [4]
 National Labor Relations Act, 14(a), 61 Stat. 151 (1947), 29 U.S.C.A. 164(a). (1952)