LOCAL UNION NO. 1055, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, and Local Union No. 624, International Brotherhood of Electrical Workers, AFL-CIO, Plaintiffs,

v.

GULF POWER COMPANY, Defendant.

Civ. A. No. 1016.

United States District Court
N. D. Florida,
Pensacola Division.

Aug. 14, 1959.

5.  9 U.S.C. §§ 1-14.

Louis Sherman, Washington, D. C., Philip D. Beall, Pensacola, Fla., Poole, Pearce & Hall, Atlanta, Ga., for plaintiffs.

Bert Lane, Yonge, Beggs & Lane, Pensacola, Fla., for defendant.

CARSWELL, Chief Judge.

This suit was initiated under 29 U.S.C.A. § 185 for a declaration of contractual rights by the plaintiffs, hereinafter called the Union, against the defendant, a public utility, hereinafter called the Company. Assuming a determination in its favor, the Union seeks a mandatory injunction to compel compliance therewith, or in the alternative an injunction requiring the Company to submit any grievances arising out of those contract rights to arbitration. There are two breaches of the contract alleged, from which the Union asks declaration and specific performance: (1) the Company refuses to negotiate with the Union as the collective bargaining representative of certain "foremen" and to afford such "foremen" any rights under the collective bargaining contract, as is alleged, the Company agreed to do under the contract, and (2) certain "supervisory" personnel are being required by the Company to work contrary to the contract.

The factual backdrop surrounding this dispute appears as follows: The Union and Company entered into the present collective bargaining contract on October 27, 1953. That instrument, while silent as to recognition of "foremen" per se, nevertheless included "foremen" along with other employees in the wage scale agreement which was appended to the contract. The contract was to remain in effect for five years unaltered and thereafter would run from year to year for the purpose of termination, but, absent termination, the agreement was binding on the parties until notice of alteration was timely given and agreed to by both Union and Company. In June, 1958, just prior to the five year anniversary date of the covenant, the Company gave notice to the Union that it would no longer recognize the Union as the collective bargaining agent for "foremen", since they were supervisory personnel. The Union did not agree to this action, whether it be denominated a proposed alteration or termination of the contract. Demand was subsequently made by the Union to submit this question to arbitration, since it took the position that the Company had voluntarily agreed under the contract to recognize it as the bargaining agent for the "foremen" as well as employee personnel, and, further, having agreed to submit all grievances arising from the contract to arbitration that the Company had a duty to live up to the contract, or at least abide by it until changed by arbitration agreements. This the Company refused, with the contention that since it could not be compelled under the law (29 U.S.C.A. § 164(a)) to recognize individuals defined as supervisors under such law for the purpose of collective bargaining, then such contractual provisions had been effectively terminated by its notice or that such provisions were unenforceable against it.

The Company assigns some seventeen grounds by motions to dismiss for failure to state a claim or, in the alternative, to strike. The legal questions with merit thus raised are grouped and will be discussed separately.

### Jurisdiction

When it appeared on the pleadings that unfair labor practices were prospectively lurking in the identical contract violations alleged, the Court examined jurisdiction. The existence of such is no bar to the jurisdiction of this Court for grievances arising under a collective bargaining contract when arbitrable are unequivocally enforceable through specific performance in the United States District Courts (24 A.L.R. 2d 752). Such private arbitration in the labor management field is to be afforded broad liberalities. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L. Ed.2d 972, and Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works, Inc., 5 Cir., 257 F.2d 467, 474. While an act may be both an arbitrable contract violation and an unfair labor practice, the former is nevertheless enforceable in the

courts, for parties may agree in the collective bargaining agreement to submit matters involving unfair labor practice to private arbitrators, and the District Court should retain jurisdiction over the contract violation until the National Labor Relations Board in the exercise of its discretion elects to effectuate the statutory policy of the National Labor Relations Act. Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works, Inc., 5 Cir., 257 F.2d 467, certiorari denied 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110.

### Was the Contract Terminated?

■■ As a bar to the arbitration of this alleged breach of contract, the Company contends the collective bargaining agreement was a divisible one under which provisions relative to recognition of the foremen were terminated. Labor contracts may contain severable portions which are unenforceable (14 A.L.R.2d 846). It is elementary that a contract is terminable in the manner agreed to (17 C.J.S. Contracts § 385). Usually a partial termination is not favored unless the parties have expressly agreed for such provisions. 17 C.J.S. Contracts § 403; Oil Workers International Union, Local No. 463, v. Texoma Natural Gas Company, 5 Cir., 146 F.2d 62, certiorari denied 324 U.S. 872, 65 S.Ct. 1017, 89 L. Ed. 1426.

The contract states that it is terminable after its fifth year of operation by giving notice " * * * at least sixty (60) days prior to August 15 of the year in which termination * * * " is " * * * desired * * * ". It is silent as to partial termination. The first purported notice of termination was seasonably given on June 14, 1958, and it provided:

"Since Foremen are supervisory employees and the Company is not required to bargain with any Union for supervisory employees, we advise you that effective August 15, 1958, the anniversary date of our Agreement, the classification of Foremen will no longer be included

in coverage under our Agreement and the Company will no longer recognize the Union as bargaining agent for these supervisory employees."

Thereafter, on August 15, 1958, the Company again gave identical notice extending the projected date for termination to November 15, 1958. And again on November 17, 1958, identical notice was given extending the operative date for termination to January 1, 1959.

The question of termination then is resolved by a construction of the Company's letters. If they were a partial termination, it was a nullity for partial termination was not agreed to. It was not a complete termination, because no indication was given to cease recognition of the Union altogether, and, indeed, the Company has recognized the Union as the representative of the employees to date.

### Is the Contract Void as Being One for An Indefinite Duration?

■ The contract was plainly terminable from year to year after its fifth anniversary by giving notice " * * * at least sixty (60) days prior to August 15 of the year in which such termination * * * " is " * * * desired * * * ". Since the contract in its entirety was terminable, likewise its recognition of foremen vel non was not in perpetuity. Upon cancellation of the entire contract, the unambiguous language of 29 U.S. C.A. § 164(a) would completely insulate the Company from any attempt whatsoever to insist upon the inclusion of bona fide foremen in any subsequent contract or negotiations therefor.

Because the contract was one capable of having a definite duration, it does not expire as the Company contends in a reasonable time.

### Contract Bar Rule and Representation

It is urged on behalf of the Company that because the policy of the National Labor Relations Board prevents the operation of any collective bargaining contract from extending the duration of ap-

propriateness of the agency to represent the bargaining unit of the composition of the same beyond a period of two years (Pacific Association of Pulp & Paper Workers, 121 N.L.R.B. 134) that accordingly the Union should receive certification as to the foregoing (since the contract has on its face exceeded a period of five years) from the National Labor Relations Board and thus exhibit its authority to sue here (42 A.L.R.2d 1415).

It is apparent that such argument preoccupies itself with a remedy available through another route of redress, 29 U.S.C.A. § 159; Franks Brothers Co. v. National Labor Relations Board, 321 U.S. 702, at pages 705 and 706, 64 S.Ct. 817, at page 819, 88 L.Ed. 1020, for only the National Labor Relations Board has the policy making power and machinery to settle representation grievances.

It should be carefully noted that no question is raised concerning the agency or duration of the Union's authority to represent the statutory employees, rather the thrust of the Company's argument only reaches the agency of the Union to represent foremen.

Such position ignores the obvious that the Company has recognized the Union as the bargaining agent for employees and we are now only concerned with what the parties contracted for as comprising the bargaining unit. Under 29 U.S.C.A. § 185 the District Courts are given jurisdiction over labor contracts by a "labor organization representing employees".

The real question here is did the Company agree under the contract to recognize the Union as the collective bargaining agent for foremen (notwithstanding that they might be statutory supervisors) with employees as comprising the bargaining unit. Our problem then is one of contract rather than representation, for if there is appropriate agency to represent employees, then it likewise extends to foremen as well.

Nor does the declaration of such legal question here on the contract preclude either party from later raising the question of representation, at the appropriate time and place, for denial of that right then would give rise to an unfair labor practice.

### Is the Contract with Foremen Enforceable?

The Company takes the position that under 29 U.S.C.A. § 164(a), it cannot be compelled to bargain collectively with a worker bearing the statutory definition of a supervisor under 29 U.S.C.A. § 152(11), and, hence, the contract thus entered is unenforceable against it. The principle of freedom of contract renders bargains freely made enforceable unless the law makes the subject matter thus bargained for illegal. Corbin on Contracts, Vol. 6, Sections 1373–1376. What is the meaning of Section 164(a), supra? Stripped of its qualifying verbiage, the nub of its substance is " * * * no employer * * * shall be compelled to deem * * * supervisors as employees for the purpose of * * * collective bargaining." This section has received a literal interpretation and application. L. A. Young Spring & Wire Corp. v. National Labor Relations Board, 82 U.S. App.D.C. 327, 163 F.2d 905, certiorari denied 333 U.S. 837, 68 S.Ct. 607, 92 L. Ed. 1121. This decision came on the heels of the Taft-Hartley Amendment to the Wagner version of the National Labor Relations Act. It had formerly been held that there was compulsion in the Wagner Act requiring employers to deal collectively with supervisors. Packard Motor Car Co. v. National Labor Relations Board, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040. The Taft-Hartley Act specifically holds to the contrary, but even the latter left supervisors free to join labor organizations. See 29 U.S. C.A. § 164(a). Because of the co-relative rights and immunities afforded supervising labor and management, it cannot be said that Congress intended it to be *illegal* for management to bargain collectively or to contract with supervisors as employees. Nor can it be said that compulsion will result in requiring the Company to arbitrate with the Union relative to foremen, where the Company

**320**

has, in fact, so contracted. While collective bargaining is to some extent a continuing process (see the quotation in Corbin on Contracts, Vol. 6, Section 420, Pocket Part), it has for the present purposes been concluded. Since the present contract was not terminated, it was automatically renewed, thus passing over "the contract opening date", leaving the parties to abide by the terms of the agreement thus renewed. The obligation of the contract does not impair the right of either party to reopen rights guaranteed by the National Labor Relations Act at the appropriate time; For the contract specifically provides a fixed, determinable annual date on which it can be terminated in its entirety by proper notice.

### Are the Grievances Arbitrable Under the Contract?

By its motion the Company raises the question of whether private arbitration was contemplated by the agreement with the Union. This question is foreclosed by certain articles of the contract: Article VIII reads in part, " * * * all questions and grievances that may arise between the parties hereto during the life of the Agreement shall be handled through the successive steps as follows: * * * That article thereafter enumerates details for private conciliation." Article IX then follows: " * * * (A)ny grievances under this Agreement, or any violation of the employees' rights under this Agreement that cannot be settled by * * * Company and * * * Union * * * shall be submitted to an Arbitration Board * * * ".

 Where there is a genuine dispute arising from a collective bargaining contract, the agreement itself is controlling as to provisions for arbitration (24 A.L.R.2d 752) and the law favors such arbitration. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, and Lodge No. 12, District No. 37, International Association of Machinists v. Cameron Iron Works, Inc., 5 Cir., 257 F.2d 467, 474.

▪ Plainly, the withdrawal of "foremen" from the coverage of the contract was an arbitrable grievance; as is likewise the working of supervisory personnel contrary to the express prohibitions of the contract.

Appropriate order in conformity with this Memorandum-Decision will be entered.