**LOCAL UNION NO. 1055, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, and Local Union No. 624, International Brotherhood of Electrical Workers, AFL–CIO, Plaintiffs,**

v.

**GULF POWER COMPANY, Defendant.**

**Civ. A. No. 1016.**

United States District Court
N. D. Florida,
Pensacola Division.

April 18, 1960.

Philip D. Beall, Pensacola, Fla., Louis Sherman, Washington, D. C., John S. Patton, Poole, Pearce & Hall, and Edwin Pearce, Atlanta, Ga., for plaintiffs.

Bert Lane, Yonge, Beggs & Lane, Pensacola, Fla., for defendant.

CARSWELL, Chief Judge.

This suit was initiated pursuant to 29 U.S.C.A. § 185 for a declaration of contractual rights by the plaintiffs, here called the Union, against the defendant, a public utility, here called the Company. Jurisdiction to hear this cause was raised by the Company in a motion to dismiss. This Court disposed of the jurisdictional question in a memorandum-decision filed on August 17, 1959. 175 F.Supp. 315. Other points raised in the motion to dismiss were also decided in that decision, and the Court will refer to that decision as a basis for some of the findings which follow.

■ The Company and the Union were operating under a collective bargaining agreement wherein the parties agreed to arbitrate matters arising under the contract, when any dispute arose. There was a "no strike" clause wherein the Union and its members agreed that during the continuance of the agreement there would be no authorized or sanctioned strikes, sitdowns or walkouts, or any other concerted cessation or delay of any work of any kind by the Union. The Company agreed that there would be no lockouts.

The Union and the Company had been operating under this agreement satisfactorily since October 1953. There was the usual 60 day "notice to terminate" clause in the contract. Early in 1959 the Company, in streamlining its operations, installed new methods of operation and new type equipment. This new operation resulted in the necessity of fewer employees. The Company offered certain employees supervisory positions, which were accepted. On June 14, 1958, the Company notified the Union that as of August 15, 1958, the Company would no longer recognize the Union as collective bargaining representatives of foremen. The Union subsequently took issue with the Company's right to refuse unilaterally to recognize the Union as bargaining agents for certain foremen, and demanded that the Company arbitrate the matter. The Company contended that under 29 U.S.C.A. § 164(a) it could

not be compelled to bargain collectively with a worker bearing the statutory definition of a supervisor under 29 U.S.C.A. § 152(3), and that, therefore, the collective bargaining agreement as to supervisors was unenforceable against the Company.

It must be noted that the Company and the Union had settled most of their problems with respect to wages and working conditions without serious controversy. They were working on a new contract and had, except for the question as set forth above, agreed as to the terms of a new contract which would take the place of the one now under consideration.

The testimony taken shows that the Company's attitude with respect to collective bargaining on the question of foremen was clear. The Company refused to arbitrate the question, contending a legal basis for its action, and seeking to have the National Labor Relations Board take jurisdiction and settle the controversy. The Union, however, was not certified, and the Board, at the instance of the Union, refused to take jurisdiction.

Upon refusal of the Company to arbitrate this question, the Union sent out ballots to its members requesting that they vote to strike. The members voted in favor of the strike, and a work stoppage resulted.

The Company notified the Union that the strike would be deemed by the Company to constitute an abrogation of the existing contract, and has since refused to recognize the Union's rights thereunder.

The Union seeks a declaration of its rights under the contract, as well as injunctive relief requiring that the Company recognize the contract and comply with the terms therein. The Union also seeks a declaration that the Company by refusing to arbitrate as to supervisory personnel violated the contract, and prays that injunction issue requiring the Company to recognize the Union as bargaining agents for the Company's employees, as well as for the foremen; that the foremen be declared as part of the Union's bargaining unit; and to prohibit the Company from assigning work to these foremen which had heretofore been their work as employees under the contract. Alternatively, the Union prays that the Company be required to arbitrate on the unilateral withdrawal of foremen from the bargaining unit.

The Company denies the existence of the contract, by virtue of the strike, which it considers an abandonment of the contract. The Company also counterclaims praying for injunctive relief.

In the previous memorandum-decision filed in this cause, this Court held that the contractual obligations of the Company were enforceable with respect to the Company's refusal to submit to arbitration the question of representation. The Company had by contract agreed to include supervisory personnel in the bargaining unit, though there was no statutory compulsion to do so. A unilateral declaration by the Company of its refusal to recognize the Union as bargaining agent for the foremen was unjustified, and their refusal to submit the question to arbitration was a breach of their contract. In view of the other settled questions between the Company and the Union, this breach was not so material as to constitute a total breach. The Union contends that this breach by the Company justified its action in calling the strike, that arbitration was an alternative remedy to their right to strike, and that the "no strike" clause was operative only so long as the Company would submit to arbitration. The Company's refusal to arbitrate, it argues, left no other course open, except to strike.

The Court cannot agree with the Union's contention. The president of the local testified that the Union did not seek the aid of the Courts in enforcing the Union's rights under the contract, although it was considered, because the judicial processes were too slow. Testimony of the Union officials shows that there was no effort to bring the matter

before the National Labor Relations Board, although that course was also open. In fact, the Company's attempt to have the question of supervisory personnel brought before the Board was thwarted by the fact that the Union was not certified before the Board, and would not seek certification. The Union unquestionably had the power to bring the question before the Board had it so desired. The Courts were open. It appears from the testimony that the Company, although guilty of a breach, acted in good faith in seeking proper determination of the issue through its unsuccessful attempt to utilize remedies which were created by Congress for this purpose. The Union contends that the economic retaliation through strike was not an abandonment of the contract, but merely an alternative method to enforce arbitration. It cites as its authority for such action Mastro Plastics Corp. v. National Labor Relations Board, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309. This is distinguishable from the Mastro case, in that the company there was guilty of interfering with the determination of the bargaining unit, through manipulation of its employees in direct violation of the Labor Act, Section 8(d), 29 U.S.C.A. § 158(d), and was also guilty of bad faith through unfair labor practices. This case concerns a breach of a labor contract by a Company not acting in bad faith and attempting to act for the purpose of reconciling the problem through proper channels. While this breach is not condoned, the action of the Company was insufficient to justify the course of action taken by the Union in arbitrarily calling a strike. The position asserted by the Company could not be considered an unfair labor practice.

▮ The Union takes a position inconsistent with the rights it seeks to enforce under the contract. The "no strike" clause is "The chief advantage which an employer can reasonably expect from a collective labor agreement". S. Rep.No. 105, 80th Cong., 1st Sess. 16 (1947). In cases where a breach is a strike in violation of a collective bargaining agreement, application of the rule excusing performance by the other party is supported by the rationale underlying such agreements. The prevention of strikes is one of the principal purposes of labor contracts and of the National Labor Relations Act. United Electrical Radio and Machine Workers of America v. National Labor Relations Board, 1955, 96 U.S.App.D.C. 46, 223 F.2d 338. The call to strike is a material breach of the contract, and not justified in the face of a partial breach which could be enforced through proper judicial or administrative action. The Union cannot and does not contend that the strike route was the only course open. Declaratory judgment and specific performance were available. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. Administrative procedures available under the Taft-Hartley Act could have been employed had the Union been disposed to invoke them.

The Union failed to consider the most elementary purposes for having contracts, this purpose being to invoke the Courts' aid to enforce or provide remedies for the breach of rights and duties owing under such contractual relation. The use of "self-help" for enforcement of rights under a contract would negate the benefit of contractual relationships. Where disputes arise as to the meaning of terms in a contract, the parties are prone to interpret ambiguities to suit their own purposes. The Courts must, therefore, define the terms in accordance with established legal guides. This is a judicial function, done with due deliberation. Although such deliberation may at times seem slow, such course cannot be replaced by hasty independent action without suffering the consequences. The Union had it in its power to avert the strike by means of Court order. It chose instead to strike and thus violate the contract.

▮▮ It is an elementary proposition of equity jurisprudence that one who seeks equity must do equity; that one who comes into equity must come in

with clean hands. Equity Courts have historically declined to grant equitable relief to one who seeks to enforce rights under a contract which he, himself, has breached.

The prayer for injunctive relief by the Union is hereby denied, and because of the Company's breach the prayer for injunctive relief in the counterclaim is hereby dismissed with prejudice.