**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SWIFT & COMPANY, Respondent.**

No. 15051.

United States Court of Appeals
Ninth Circuit.

Jan. 7, 1957.

Theophil C. Kammholz, Gen. Counsel, NLRB, David Findling, Associate Gen. Counsel, Marcel-Prevost, Asst. Gen. Counsel, Frederick U. Reel, John E. Jay, Attorneys, NLRB, Washington, D. C., for petitioner.

Marion B. Plant, Moses Lasky, Bailey Lang, Brobeck, Phleger & Harrison, San Francisco, Cal., for respondent.

Before HEALY, POPE and LEMMON, Circuit Judges.

HEALY, Circuit Judge.

This is a proceeding pursuant to the National Labor Relations Act, 29 U.S. C.A. § 151 et seq. for enforcement of a Board order directing respondent Swift & Company to bargain with a local of Amalgamated Meat Cutters Union as the duly certified representative of respondent's plant clerks and standard checkers at its South San Francisco plant. Respondent refused to comply with the direction on the ground that these workers are confidential and supervisory employees under the Act. Here respondent has abandoned its contention as respects the standard checkers, so that the sole matter for our consideration is the status of the plant clerks.

Following is a summary of the work these latter employees do: In the performance of their clerical duties the plant clerks are immediately supervised by the respective foremen to whose departments they are assigned. Some work for a number of foremen, although most of them remain in one office where they perform their duties, occupying a desk adjacent to, or jointly with, the foreman whose office they share. The primary duties of the plant clerks concern the maintenance of a variety of records for their respective departments relating to production, shipment, and costs. On the stock record books the clerks enter the quantity and location of the product being cured and the date the product is cured. They prepare departmental records and reports concerning volume of production, supply, inventory, cost data, transfer of products in and out of the department, volume of shipment, and the

number of hours worked by the employees. In addition, using the cost information supplied by the general business office, the superintendent's office, and the chief engineer, the plant clerks fill out the weekly cost reports for their respective departments which show, among other things, the cost of the supplies, labor costs, steam and power costs, cost of repairs, and overhead costs, including sales data. They prepare the employees' vacation slips, which are sent to the timekeeper for the computation of vacation pay.

Aside from these obviously clerical tasks, the plant clerks weigh the products, manipulating the scale from inside the plant office after the products are placed on the scale by the production employees. They instruct the employees where to place and when to move certain products in the course of the processing. (As typical of the work just mentioned, the clerks instruct the "overhaul" men as to which casks to roll and how far to roll them in order properly to cure the meats.) In the brief absences of the foremen, the plant clerks, as do some of the production employees, assume responsibility in the departments for short intervals. However, the plant clerks have no power to hire, discharge, assign or rate employees, or even make to the foremen effective recommendations concerning employees. And although the clerks may compile data for use by their respective foremen in the handling of employee grievances when so instructed by the foremen, the grievances are resolved by the foreman and the aggrieved employee without the presence of the plant clerk.

These clerks are paid weekly salaries, are given work clothes, and share a locker room with the foremen. They, like the production workers, punch the time clock of the department, and, like the other salaried employees, the plant clerks enjoy the same type of health and welfare benefits enjoyed by the production employees. Plant clerks can not normally expect to be promoted to foremen, as there is no fixed line of promotion and production workers are frequently promoted to these supervisory positions. Plant clerks receive less pay than certain production workers, and have on occasion been transferred from salaried positions to work as production employees.

The term supervisor is defined in § 2 (11) of the Taft-Hartley Act as follows:

"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C.A. § 152(11).

In urging its claim that the plant clerks are to be considered supervisors, respondent relies on the circumstance that they tell employees where to place and when to move certain products in the course of processing, and that they take charge of the department for brief intervals when a foreman is absent. The argument is predicated on the statutory phrase "or responsibly to direct them." [1] The Board's reply is that these activities are of "a merely routine or clerical nature" as those terms are used in the statute.

1. Senator Flanders authored the amendment which added to the definition of the term "supervisor" the phrase "or responsibly to direct them." Speaking generally of the persons § 2(11) was intended to cover, he said: "Such men are above the grade of 'straw bosses, lead men, set-up men, and other minor supervisory employees,' as enumerated in the report. Their essential managerial duties are best defined by the words 'direct responsibly,' which I am suggesting." 2 Leg.Hist. of the L.M.R.A.1947, p. 1303, 93 Daily Cong.Rec. 4804 (May 7, 1947).

The conference report on the bill stated: "The Senate amendment [which was adopted by the conference and enacted in the final bill] confined the definition

We are satisfied that the Board's appraisal of the activities in question is well grounded. Its ruling appears to be in harmony with the intent of Congress and is in accord with the holdings of this court in the cognate cases of N. L. R. B. v. Osbrink, 1954, 218 F.2d 341, 344, and N. L. R. B. v. Parma Water Lifter Co., 1954, 211 F.2d 258, 261.

A decree enforcing the Board's order will accordingly be entered.

James W. Mehaffy, Keith, Mehaffy, McNicholas & Weber, Beaumont, Tex., for appellant.

Cleve Bachman, Beaumont, Tex., Orgain, Bell & Tucker, Beaumont, Tex., of counsel, for appellee.

of 'supervisor' to individuals generally regarded as foremen and persons of like or higher rank." 1 Leg.Hist. of the L.M.

R.A.1947, p. 539, H.R. Rep. No. 510, 80th Cong., 1st Sess., 35 (1947).